**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BRITE SMART CORP,<br><br>    Plaintiff,<br><br>vs.<br><br>GOOGLE INC.,<br><br>    Defendant. | 2:14-cv-00760-JRG |

**GOOGLE'S MOTION TO TRANSFER VENUE TO THE NORTHERN
DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(A) AND SUPPORTING
MEMORANDUM**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| | A. | Plaintiff Has No Connection to the EDTX | 2 |
| | B. | The Patents-in-Suit Target Google's Click Fraud Detection Features | 2 |
| | C. | The Bulk of Google's Relevant Evidence and Witnesses Are Located in the NDCA at Google's Headquarters in Mountain View, California | 3 |
| | D. | Third-Party Witnesses, Including A Prosecuting Attorney, Former Google Employees, and Potential Prior Art Witnesses, Are Located in the NDCA | 4 |
| | E. | Google Has No Offices or Facilities in the EDTX | 5 |
| III. | APPLICABLE LAW | | 6 |
| IV. | ARGUMENT | | 6 |
| | A. | Google Could Have Been Sued in the NDCA | 7 |
| | B. | The Balance of Private Interest Factors Strongly Supports Transfer to the NDCA | 7 |
| | | 1. Relative Ease of Access to Sources of Proof Strongly Favors Transfer | 7 |
| | | 2. Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Strongly Favors Transfer | 10 |
| | | 3. Cost of Attendance for Willing Witnesses Strongly Favors Transfer | 11 |
| | | 4. Remaining Private Factors Are Neutral | 12 |
| | C. | The Balance of Public Interest Factors Supports Transfer to the NDCA | 12 |
| | | 1. Court Congestion is Neutral | 12 |
| | | 2. Local Interest Strongly Favors Transfer | 13 |
| | | 3. Both Courts are Equally Familiar with Patent Law, and There is No Concern Regarding Conflict of Laws | 14 |
| V. | CONCLUSION | | 14 |

## TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852 (E.D. Tex. Sept. 18, 2013) 13

*In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2011) .............................................................. 12

*In re Genentech Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ..................................................... 7, 8, 10, 11

*In re Google Inc.*, Case No. 2014-147 (Fed. Cir. Oct. 9, 2014) ....................................................... 7

*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ..................................................... 13

*In re Link-a-Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) .............................................. 14

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) ................................................................... 9

*In re Morgan Stanley*, 417 Fed. Appx. 947 (Fed. Cir. 2011) .......................................................... 8

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) ..................................................... 6, 8, 11

*In re TOA Techs., Inc.*, 543 F. App'x 1006 (Fed. Cir. Oct. 3, 2013) ........................................ 8, 13

*In re Toyota Motor Corp.*, 747 F.3d 1338 (Fed. Cir. Apr. 3, 2014) ...................................... 8, 10, 11

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ....................................................... 6, 7, 9

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ................................................. 6, 11, 13

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) ......................................................... 9

*Invensense, Inc. v. STMicroelectronics, Inc.*, No. 13-40501, 2014 WL 105627 (E.D. Tex. Jan. 10, 2014) ................................................................................................................................. 14

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 10-216, 2012 WL 462956 (E.D. Tex. 2012) ........................................................................................................................ 9

*Lone Star Doc. Mgmt., LLC v. Catalyst Repository Sys., Inc.*, No. 12-164, 2013 WL 5496816 (E.D. Tex. Mar. 15, 2013) ........................................................................................................ 12

*Mitel Networks Corp. v. Facebook, Inc.*, 943 F.Supp. 2d 463 (D.Del. May 1, 2013) ................. 11

*Wacoh co. v. Kionix Inc.*, 845 F. Supp. 2d 597 (D. Del. 2012) ...................................................... 8

*Wireless Recognition Techs. LLC v. Nokia Corp. et al.*, No. 2:10-cv-365, 2012 WL 506669 (E.D. Tex. 2012) ........................................................................................................................ 7

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................................ 6

28 U.S.C. § 1404(a) ............................................................................................................... 1, 6, 14

28 U.S.C. § 1406(a) ........................................................................................................................ 1

**TABLE OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Declaration of Mr. Abeer Dubey |
| Exhibit B | Declaration of Mr. David Turner |
| Exhibit C | Declaration of Ms. Amanda Tekell |
| Exhibit D | Declaration of Ms. Jeong Ah Joy Lee |
| Exhibit E | Tex. Sec. of St. Rpts. |
| Exhibit F | Dkt. Rpts. of Stafford Davis |
| Exhibit G | Accurint Rpts. and LinkedIn Profiles |
| Exhibit H | S&P Capital IQ Company Profiles |
| Exhibit I | IAB Press Release |
| Exhibit J | Excerpt from PW Patent Litigation Study |
| Exhibit K | Time to Disposition |

Pursuant to 28 U.S.C. § 1404(a), Defendant Google Inc. ("Google") hereby moves the Court for a transfer of venue from the Eastern District of Texas ("EDTX") to the Northern District of California ("NDCA").[1] This motion is supported by the memorandum below and the declarations of Abeer Dubey ("Dubey Decl.", Ex. A), David Turner ("Turner Decl.", Ex. B), Amanda Tekell ("Tekell Decl.", Ex. C), and Jeong Ah Joy Lee ("Lee Decl.", Ex. D).

**I. INTRODUCTION**

Two months before filing suit, Plaintiff registered as a foreign company in Texas claiming as its "principal place of business" a Tyler address that it "shares" with at least nine other companies. Some of those companies have (or had) the same litigation counsel as Plaintiff. Plaintiff claims no other connection to the EDTX. The Federal Circuit has held repeatedly that such artificial presence in the district that exists for no other purpose than to manufacture venue does not establish convenience in venue analysis.

The convenience factors point firmly in the direction of the NDCA. Google's click fraud detection services, the target of this infringement action, were designed and created in the NDCA. Many of the witnesses—including current and former Google employees—who can testify to the design and the development of click fraud detection services reside near Google's headquarters in Mountain View, California, which is in the NDCA. At least one prosecuting attorney for the patents-in-suit and several witnesses who likely possess relevant prior art information also reside in the NDCA. Four out of eight private and public interest factors that are used in the Fifth Circuit when determining transfer motions weigh heavily in favor of transfer, and the remaining factors are neutral or do not apply. No factor weighs against transfer. Accordingly, the established Fifth Circuit and Federal Circuit precedent directs that this case be transferred to the NDCA.

---

[1] Google does not waive its right to challenge venue under 28 U.S.C. § 1406(a).

1

## II. BACKGROUND

### A. Plaintiff Has No Connection to the EDTX

Plaintiff Brite Smart Corp. ("Brite Smart") holds itself out as a patent holding and patent licensing company. Brite Smart incorporated in Delaware in 2002. (Ex. E, Tex. Sec. of St. Rpts., at 1.) It then registered as a foreign corporation in Austin, Texas on May 9, 2014. (*Id.*) Brite Smart filed this suit on July 10, 2014.

Brite Smart shares its office with at least nine other companies.[2] (*Id.*; Tekell Decl. at ¶ 4.) All ten companies list Michael J. Collins as their corporate representative—*e.g.*, "Manager", "Managing Member", "Member of the Board of Directors", or "Director"—and as their registered agent. (Ex. E.) Mr. Collins is known to be a private investigator for litigation support. (Tekell Decl. at ¶ 5.) One of Plaintiff's law firms in this case, Stafford Davis, also represents, or has represented, at least two of those companies, Patent Group LLC and Better Mouse Company, LLC, in more than a dozen recent patent infringement actions in the EDTX. (Ex. F, Dkt. Rpts. of Stafford Davis; Lee Decl. at ¶ 6.)

Google is not aware of any Brite Smart witness or document that is materially relevant to this action that is located in the EDTX. The sole common inventor of the four patents-in-suit, Mr. Patrick Zuili, resides in Boca Raton, Florida. (Ex. G, Accurint Rpts. and LinkedIn Profiles, at 1; Lee Decl. at ¶¶ 7-8.)

### B. The Patents-in-Suit Target Google's Click Fraud Detection Features

Brite Smart's complaint asserts four patents that relate to methods of detecting fraudulent

---

[2] The nine companies are: Collins Inv. LLC; Patent Group, LLC; Better Mouse Company, LLC; Piney Woods Patent Group LLC; East Texas Patent Management LLC; Fare Technologies LLC; Aloe Technologies, LLC; Anderson County Jail, LLC; and Collins Inv. 2 LLC. (Ex. E; Lee Decl. at ¶ 5.) The first three companies, along with Brite Smart, are listed physically on the door of the office. (Tekell Decl. at ¶ 4.)

clicks. (D.I. 1 at ¶¶ 11, 18, 25, 32.) Brite Smart alleges infringement by Google's "pay-per-click advertising and systems, including, for example and without limitation, those used in connection with Google's search engine, AdWords, DoubleClick, and AdSense." (D.I. 1 at ¶¶ 13, 20, 27, 34.)

Google formed Ad Traffic Quality Team in 2003. (Turner Decl. at ¶ 5.) Ad Traffic Quality Team provides invalid click and click fraud detection services for all of Google's advertising products, including AdWords, AdSense, and DoubleClick. (*Id*.) In other words, the claims of the asserted patents target Google's click fraud detection services, rather than Google's search engine or specific advertising platforms such as AdWords, AdSense, or DoubleClick.

### C. The Bulk of Google's Relevant Evidence and Witnesses Are Located in the NDCA at Google's Headquarters in Mountain View, California

Google is a Delaware corporation that has been headquartered in Northern California since 1998 and in Mountain View since 2004. (Dubey Decl. at ¶ 5.) Google's Mountain View headquarters is the strategic center of Google's business. (*Id*. at ¶ 6.) Decisions related to Google's overall business are made by managers and other employees located in Mountain View, including the most significant decisions related to Google's click fraud detection services. (*Id*.)

Particularly, Google's click fraud detection system was designed and created at the Mountain View headquarters in 2003. (Turner Decl. at ¶ 5.) The Ad Traffic Quality Team is located in three locations: the Mountain View headquarters, Zurich, and London.[3] (*Id.* at ¶ 6.) There are about eighty Ad Traffic Quality engineers worldwide, and the majority of them—more than forty—are in Mountain View. (*Id*.) The Mountain View office is responsible for developing and implementing invalid click detection filters and accounting for invalid click traffic. (*Id*. at ¶ 5.)

---

[3] The Zurich Ad Traffic Quality Team was added in 2005. (Turner Decl. at ¶ 6.) The London Ad Traffic Quality Team was formed in 2013 when Google acquired Spider.io, a London-based company. (*Id.*) There was a small team of about three in Pittsburgh, Pennsylvania on the Ad Traffic Quality Team, but that location closed down around June 2007 after only a few months. (*Id.*)

The Zurich and London offices focus primarily on queries and impressions—a measure of the number of times an advertisement is seen—rather than clicks, which are the subject of the patents-in-suits. (*Id.* at ¶ 6)

The following three Ad Traffic Quality Team engineers are knowledgeable regarding the design and development of the accused features and may provide testimony in this action: (1) David Turner, Software Engineer; (2) Razvan Surdulescu, Senior Staff Software Engineer; and (3) Per Bjorke, Product Manager. (Dubey Decl. at ¶ 7.) All three are located in Mountain View. (*Id.*)

Further, Google's records regarding the relevant technology are predominantly located in its headquarters in Mountain View. (*Id.* at ¶ 8.) All or nearly all of these documents are hosted on Google's various secure servers, which are accessible from anywhere, as long as one has proper login credentials and a secure network connection. (*Id.* at ¶ 9.)

However, all documents hosted on Google's servers are ultimately managed by the Mountain View headquarters. (*Id.*) Plus, given that most, if not all, of the employees with relevant knowledge of the accused instrumentalities are based in Mountain View, any hard copies of documents and employee notebooks that might exist would be located in Mountain View. (*Id.*) In addition, documents that are relevant to this case and would eventually be produced in this case must be collected, reviewed, and produced by Google's central litigation support team that is located at the Mountain View headquarters. (*Id.*) Moreover, most click fraud-related documents are created and maintained at the Mountain View headquarters, though some were created in Zurich. (Turner Decl. at ¶ 7.)

      D.    <u>**Third-Party Witnesses, Including A Prosecuting Attorney, Former Google Employees, and Potential Prior Art Witnesses, Are Located in the NDCA**</u>

Key potential third-party witnesses are also located in the NDCA. First, Joe Zheng, who prosecuted at least one of the four patents-in-suit (U.S. Patent No. 7,249,104), resides in Cupertino,

4

California, which is in the NDCA. (Ex. G at 4; Lee Decl. at ¶ 9.)

Second, former Ad Traffic Quality Team engineers Shuman Ghosemajumder, Neil Daswani, and Michael Stoppelman reside in the NDCA. (Ex. G at 5-12; Lee Decl. at ¶¶ 10-12.) They have knowledge regarding the initial design and implementation of Google's click fraud detection services and potentially invalidating art. (Turner Decl. at ¶ 8.)

Third, many of the potential prior art witnesses are located in or near the NDCA. California is the epicenter of the PPC search engine industry. As discussed above, PPC advertisers and advertising platforms likely have significant prior art evidence because they developed and implemented schemes to identify and combat click fraud.[4] Most of them are based in California, or have co-founders or inventors that reside in California, as shown in the table in ¶ 14 of the Lee Declaration.[5]

### E.  Google Has No Offices or Facilities in the EDTX

Google has no offices or facilities in the EDTX. (Dubey Decl. at ¶ 10.) Google is not aware of any document relevant to this action or any witness with relevant information located in the EDTX. (*Id.*) Google has offices in Austin and Dallas, which are in the Western District and Northern District of Texas, respectively. (*Id.* at ¶ 11.) However, these offices have no involvement

---

[4] The NDCA is home to four of the five founding members of the Interactive Advertising Bureau (IAB) Click Measurement Panel, a working group that was formed to create an industry standard for quantifying click fraud, namely, Google, Yahoo!, Ask.com (now IAC Search & Media), and LookSmart. (Ex. H, S&P Capital IQ Company Profiles, at 1-6; Ex. I, IAB Press Release, "The Interactive Industry Commits to the Development of Click Measurement Guidelines" (Aug. 2, 2006); Lee Decl. at ¶¶ 14-15.) The fifth founding member Microsoft is headquartered Washington, which is in the Ninth Circuit and is much closer to the NDCA than the EDTX. (Ex. H at 9; Lee Decl. at ¶ 14.)

[5] Such companies and individuals include: Yahoo!; Ask.com; Garrett Gruener and David Warthen (co-founders of Ask.com); LookSmart, Ltd.; Microsoft Corp.; David Zinman, Jason Strober, and Andrew Conru (co-founders of FocaLink Media Service); eBay Inc.; Paul Nakada, Tom Shields, and John Danner (co-founders of NetGravity); Russ Seligman (formerly with NetGravity); Andrew Schulz (formerly with Adknowledge); CJ Affiliate by Conversant; Chad Steelberg and Ryan Steelberg (co-founders of AdForce); Sandilee Mathers (formerly with AdForce); Business.com; Amazon.com; and Expedia (Ex. G at 13-84; Ex. H; Lee Decl. at ¶¶ 13-15.)

5

with the click fraud detection services accused in this case. (*Id*.)

### III. APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold inquiry under § 1404(a) is "whether a civil action might have been brought in the destination venue." *In re Volkswagen of Am., Inc*., 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (citations and quotations omitted) ("*Volkswagen*"). A patent infringement suit may be brought in any district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

The Fifth Circuit considers eight private and public interest factors when determining whether the proposed venue is "clearly more convenient" than the transferor forum. *In re Nintendo Co., Ltd*., 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive." *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008). The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law." *Id.* at 1319.

### IV. ARGUMENT

Each of the private and public interest factors either strongly favors transfer or is neutral,

and no factor weighs against transfer. Accordingly, transfer should be granted to the NDCA.[6]

### A. Google Could Have Been Sued in the NDCA

There can be no dispute that there is personal jurisdiction over Google in the NDCA and that it would be an appropriate venue. Google's principal place of business in Mountain View, California is located within the NDCA. Thus, the threshold requirement for a § 1404(a) transfer has been satisfied.

### B. The Balance of Private Interest Factors Strongly Supports Transfer to the NDCA

#### 1. Relative Ease of Access to Sources of Proof Strongly Favors Transfer

Accessibility to sources of proof is an important private interest factor that weighs heavily in favor of transfer.[7] Virtually all of the witnesses and documents related to Google's click fraud detection service are located in, or accessible from, Mountain View. (Dubey Decl. at ¶ 8; Turner Decl. at ¶¶ 5-7.)

Most importantly, all of Google's click fraud detection-related development occur in the NDCA. (Turner Decl. at ¶¶ 5-7.) The majority of the worldwide Ad Traffic Quality Team (more than forty out of eighty Ad Traffic Quality Team engineers), and specifically all of the U.S.-based Ad Traffic Quality Team employees who develop the click fraud detection services at issue in this case are located in Mountain View. (*Id.* at ¶ 6.) The three Ad Traffic Quality Team engineers who

---

[6] *Nintendo*, 589 F.3d at 1198 ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."); *see also In re Google Inc.*, Case No. 2014-147, *7-8 (Fed. Cir. Oct. 9, 2014) (granting Google's petition for a writ of mandamus to stay cases in the EDTX pending the outcome of the NDCA action, and stating that the comparative convenience "considerations point firmly in the direction of the [NDCA]").

[7] "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). "Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor." *Wireless Recognition Techs. LLC v. Nokia Corp. et al.*, No. 2:10-cv-365, 2012 WL 506669, *2 (E.D. Tex. 2012); *see also TS Tech*, 551 F.3d at 1321.

7

are expected to testify in this litigation are in Mountain View. (Dubey Decl. at ¶ 7.) Most documents relevant to this litigation are created and maintained in Mountain View.[8] (Turner Decl. at ¶ 7.)

To the extent Plaintiff argues that New York, Zurick, or London holds some relevant evidence, that argument is irrelevant because those locations are outside of either the transferor or transferee forum. "The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. Apr. 3, 2014); *see Nintendo*, 589 F.3d at 1199-1200; *Genentech*, 566 F.3d at 1346.

In addition, third-party witnesses with information relevant to the prosecution and invalidity of the patents-in-suit and non-infringement of the accused instrumentalities also reside in the NDCA. First, Joe Zheng, the prosecuting attorney who lives in Cupertino, may testify regarding prosecution history estoppels which may be valuable evidence for Google's non-infringement arguments.[9] (Ex. G at 4; Lee Decl. at ¶ 9.)

Second, the three former Ad Traffic Quality Team engineers in the NDCA identified above, have crucial information regarding the initial design and implementation of click fraud detection features and potential prior art systems or publications that existed in the 2000s.[10]

---

[8] This Court and the Fifth Circuit previously ruled that, even when some evidence is widely accessible electronically, "this does not negate the significance of having trial closer to where [moving party]'s physical documents and employee notebooks are located." *In re TOA Techs., Inc.*, 543 F. App'x 1006, 1010 (Fed. Cir. Oct. 3, 2013); *see also Volkswagen*, 545 F.3d at 316.

[9] The Federal Circuit gives weight to the locale of patent prosecution attorneys in transfer analysis. *In re Morgan Stanley*, 417 Fed. Appx. 947, 949 (Fed. Cir. 2011) (finding that there is "an even more compelling showing for transfer" where "[n]otably, the inventors, patent prosecution attorneys, and the defendants' employees with unique knowledge regarding the accused products reside in or near the transferee venue").

[10] Further, courts have recognized that "with the passage of time from now until trial, it is possible, if not probable, that some [Google] employees will become ex-employees." *See Wacoh co. v. Kionix Inc.*, 845

(Turner Decl. at ¶ 8; Ex. G at 5-12.) Further, their testimonies may be required to demonstrate the legacy functionality of Google's click fraud detection services, particularly with respect to Google's laches defense, which will rely on those services as they existed at the time of their releases.

Third, the entities and witnesses associated with prior art systems that are located in or near the NDCA, identified in ¶ 14 of the Lee declaration, have information and documentary evidence that are highly relevant to formulating Google's invalidity positions. (Ex. G at 13-84; Ex. H.) Some of them are known to have invented PPC advertising, and many of them provided competing services in the click fraud detection arena around the time the patents-in-suit were filed. (Lee Decl. at ¶ 14.) The technical details of how to detect click fraud are generally extremely sensitive information to companies that provide advertising platforms, because spammers could use such information to circumvent the filter signals. Thus, finding the most relevant prior art systems or references requires a lengthy, in-depth investigation and likely involvement of third party prior art authors or entities.

In contrast, no relevant evidence, witness, or document is in the EDTX. Michael J. Collins—who, in addition to acting as the corporate representative and the registered agent for at least ten companies, works as an independent private investigator—likely has no material knowledge regarding the substance of this litigation. (*See* Tekell Decl. at ¶ 5.) Brite Smart's presence in the EDTX is artificial and recent and amounts to no more than a "classic case" of "gam[ing] the system"; thus, it should be given no weight in the venue analysis.[11] *In re Zimmer*

---

F. Supp. 2d 597, 602-03 (D. Del. 2012).

[11] *See also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (holding that the Court need not weigh connections to forum "made in anticipation of litigation and for the likely purpose of making that forum appear convenient," where the plaintiff incorporated sixteen days before filing suit); *TS Tech.*, 551 F.3d at 1319-20 ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a

*Holdings, Inc.*, 609 F.3d 1378, 1381-82 (Fed. Cir. 2010) (holding that the patentee's office in the EDTX which the patentee shared with one of its litigation counsel's clients and which "staffed no employees, were recent, ephemeral, and an artifact of litigation and appeared to exist for no other purpose than to manipulate venue" does not establish convenience in the venue analysis).

The facts here are analogous to those in *Toyota.* In *Toyota*, the plaintiff incorporated in the Western District of Texas five months before filing suit and shared the same office and the same CEO with numerous other companies. *Toyota*, 747 F.3d at 1339 (granting mandamus on transfer). Because the plaintiff failed to identify any specific party or non-party witness in the EDTX, and because it was "undisputed that a number of witnesses in the [transferee forum] have knowledge potentially relevant to infringement and validity issues," the Federal Circuit determined that there is "nothing on the transferor-forum side of the ledger [and thus] the transferee forum is '*clearly* more convenient" and that a finding that the transferee forum is "*far* more convenient . . . is not what is required." *Toyota*, 747 F.3d at 1341 (emphasis in original). Similarly, here, because there is no relevant evidence in the EDTX, and because Google identified numerous witnesses in the NDCA that have knowledge potentially relevant to infringement and validity issues, the NDCA is clearly more convenient.

### 2. Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Strongly Favors Transfer

"The fact that [a] transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. As discussed above, one prosecution attorney, three former Ad Traffic Quality Team engineers, and numerous potential

---

distinct factor in the § 1404(a) analysis."); *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 10-216, 2012 WL 462956, at *3 (E.D. Tex. 2012) ("[I]t is the Court's duty to carefully scrutinize" party assertions supporting venue claims, "to determine whether the party is trying to manipulate venue through its place of incorporation or principal place of business.").

prior artists are located in the NDCA and are subject to process there. As described above, their live trial testimonies may be necessary to Google's invalidity and non-infringement defenses at trial.

This Court has the authority to subpoena these third-party witnesses for deposition, but the California witnesses would not be subject to compulsory process for trial here. Because third-party witnesses are unlikely to voluntarily disrupt their lives and fly across the country for litigation in which they have no interest, procuring their attendance at trial will likely require compulsion.[12]

Google is not aware of any third-party witness in the EDTX for whom compulsory process would be needed if the case is transferred. The inventor of the patents-in-suit resides outside of both transferor and transferee districts, in Boca Raton, Florida. (Ex. G at 1.) Given the likely unavailability of numerous key third-party witnesses in the EDTX, this factor weighs heavily in favor of transfer.

### 3. Cost of Attendance for Willing Witnesses Strongly Favors Transfer

The convenience of witnesses "is probably the single most important factor" in determining the convenience of a forum.[13] *Genentech*, 566 F.3d at 1342. Consideration of this factor shows that the NDCA is clearly more favorable for Google than this district.

It is clear that a number of Google witnesses in the NDCA have knowledge potentially relevant to infringement, validity, and damage issues—including the three identified above—despite Brite Smart's vague infringement allegations regarding the accused services and/or

---

[12] *Mitel Networks Corp. v. Facebook, Inc.*, 943 F.Supp. 2d 463, 473 (D.Del. May 1, 2013) ("It is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe those witnesses will refuse to testify absent a subpoena.").
[13] The Fifth Circuit recognizes that inconvenience and costs to a witness increase with distance from the trial venue. *See Volkswagen*, 545 F.3d at 317.

11

products.[14] There is no Google employee in the EDTX. Every Google employee witness with relevant knowledge would have to be transported, mostly from California, to this district for trial.[15] That would incur needless travel and lodging expenses, as well as the loss of work hours occasioned by travel, which could be avoided if the dispute was decided in the NDCA.[16]

### 4. Remaining Private Factors Are Neutral

Other than the access to sources of proof, availability of compulsory process, and cost of attendance for willing witnesses, there appears to be no practical obstacle to trying this case in either district, so the remaining factors are neutral. This case is in its infancy; nothing has happened beyond the filing of the complaint and the answer and an order regarding the scheduling conference. Thus, this Court has not expended a great deal of time or resources on this case.[17]

## C. The Balance of Public Interest Factors Supports Transfer to the NDCA

While the first, third, and fourth public interest factors are either inapplicable or neutral, the local interest factor weighs strongly in favor of transfer to the NDCA, where this dispute is likely to be resolved expediently and where the local interest is stronger.

### 1. Court Congestion is Neutral

---

[14] *See Toyota*, 747 F.3d at 1340 (determining that "it appears undisputed that a number of witnesses in the [transferee forum] have knowledge potentially relevant to infringement and validity issues, even if it is not possible at present to specify further just how material their testimony might be to the yet-undeveloped issues in the case").

[15] Where "a substantial number of material witnesses reside within the transferee venue and [transferee state], and no witnesses reside within the Eastern District of Texas," this factor must weigh "substantially in favor of transfer." *Genentech*, 566 F.3d at 1345; *see also Nintendo*, 589 F.3d at 1199 (holding that this factor "clearly" favored transfer where potential witnesses were located in the transferee forum (Washington), Japan, Ohio, and New York, and where no witnesses were in the transferor forum).

[16] *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2011) (required travel of party witnesses to forum would cause "significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work," as well as "personal costs associated with being away from work, family, and community," considerations that should be taken into account in a transfer decision).

[17] *See Lone Star Doc. Mgmt., LLC v. Catalyst Repository Sys., Inc.*, No. 12-164, 2013 WL 5496816, at *5 (E.D. Tex. Mar. 15, 2013) (considering the amount of court resources spent on the case until the transfer decision).

The PriceWaterhouseCoopers 2014 Patent Litigation Study indicates that the median time to trial for patent cases in this Court is 2.21 years, compared to 2.44 years in the NDCA. (Ex. J, Excerpt from PW 2014 Patent Litigation Study, 17; Lee Decl. at ¶ 16.) Similarly, civil cases that require "Court Action" in the EDTX have a 26.8 month median time period from filing to disposition through trial, compared to 29 months in the NDCA. (Ex. K, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases (Sept. 30, 2012); Lee Decl. at ¶ 17.) Because the difference in median time is only about two to three months, this factor is neutral.[18]

### 2. Local Interest Strongly Favors Transfer

The Federal Circuit has directed that in patent actions, the locale where the allegedly infringing product was designed and developed should be considered to have a "significant interest" in the controversy.[19] The NDCA has a significant interest in this dispute because: (1) Google headquarters and most of the likely witnesses are in that district; (2) the bulk of the allegedly infringing activities as well as the research and development of the accused services and/or products occurred there; and (3) Brite Smart's allegations call into question the work and reputation of several individuals residing or conducting business in that community.[20] As discussed above, many of the potential prior art inventors—the value of whose work is in effect

---

[18] *See Affinity Labs of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 853 (E.D. Tex. Sept. 18, 2013) (court congestion factor neutral as between the EDTX and the NDCA).

[19] *TOA*, 543 F. App'x at 1010 (holding that the transferee venue has a local interest in deciding the matter, whereby the defendant had many employees and top executives in the transferee forum and there was no connection between the case and the EDTX except for the fact that the accused products were sold there); *see also Hoffman-LaRoche*, 587 F.3d at 1338 ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.").

[20] *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding that the proposed transferee district's "local interest in this case remains strong because the cause of action calls into question the work and reputation" of the accused product's developers); *see also Affinity Labs*, 968 F. Supp. 2d at 855 ("The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley.").

challenged by the later-conceived Zuili patent claims—are located in or near the NDCA.

In contrast, the only alleged connection between the EDTX and the parties' dispute is that certain Google ad services are available here. But these are offered and sold worldwide via the Internet. Thus, the EDTX has no more connection to the present dispute than any other federal district court.[21]

### 3. Both Courts are Equally Familiar with Patent Law, and There is No Concern Regarding Conflict of Laws

The remaining two public interest factors are neutral and inapplicable. First, because the parties' claims arise under the federal patent laws, the law is uniform nationwide, and the judges in both districts are equally well-versed in patent law. *See In re Link-a-Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). Second, patent cases generally do not present any conflict of law issues, and no such issues are apparent in this case. *See Invensense, Inc. v. STMicroelectronics, Inc.*, No. 13-40501, 2014 WL 105627, at *7 (E.D. Tex. Jan. 10, 2014).

## V. CONCLUSION

For the foregoing reasons, Google respectfully submits that this Court should transfer this action to the NDCA pursuant to 28 U.S.C. § 1404(a).

| | |
|---|---|
| October 24, 2014 | Respectfully submitted by: |
| | */s/ Michael E. Jones* |
| Mayer Brown LLP | Michael E. Jones, SBN: 10929400 |
| A. John P. Mancini (*pro hac vice*) | POTTER MINTON LLP |
| Amr O. Aly (*pro hac vice*) | 110 N College Avenue, Suite 500 |
| 1675 Broadway | Tyler, TX 75702 |
| New York, NY 10019 | 903-597-8311 |
| (212) 506 -2500 | mikejones@potterminton.com |
| | *Attorneys for Defendant Google Inc.* |

---

[21] *See Volkswagen*, 545 F.3d at 318 (noting that a "rationale [which] could apply to virtually any judicial district and division of the United States" does not support transfer); *TOA*, 543 F. App'x at 1010 (holding that where the accused product is sold nationwide, its alleged sale in the plaintiff's chosen forum does not establish a substantial connection to that forum).

## CERTIFICATE OF CONFERENCE

  The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on September 22, 2014 between Patrick Clutter, counsel for Defendant Google Inc., and Stafford Davis, counsel for Plaintiff Brite Smart Corp. Mr. Davis confirmed that Plaintiff is opposed to the relief sought in this motion.

                  */s/ Michael E. Jones*
                  Michael E. Jones

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 24, 2014.

/s/ Michael E. Jones