# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **BRITE SMART CORP.** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civ. Action No. 2:14-cv-760** |
| | § | |
| **GOOGLE INC.** | § | **JURY DEMANDED** |
| | § | |
| *Defendant*. | § | |
| | § | |

## PLAINTIFF BRITE SMART CORP.'S OPPOSITION TO
## GOOGLE INC.'S MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 2

   A.    The Eastern District of Texas is Clearly More Convenient for Brite Smart ................. 2

      1.   Brite Smart's Party Witnesses ................................................................... 2

      2.   Brite Smart's Documents ............................................................................ 3

      3.   Brite Smart's "Non-Party" Witnesses ....................................................... 3

   B.    Defendant Overstates its Claim of Convenience in NDCA ......................................... 6

      1.   Defendant's Party Witnesses ...................................................................... 6

      2.   Defendant's "Non-Party" Witnesses .......................................................... 7

   C.    Patent Prosecution Witnesses ...................................................................................... 8

III.    ARGUMENT ...................................................................................................... 8

   A.    The Private Interest Factors Weigh Against Transfer or Are Neutral ........................ 8

      1.   The Relative Ease of Access to Sources of Proof Weighs Against Transfer ................ 9

      2.   The Availability of Compulsory Process Weighs Against Transfer or is Neutral ........ 12

      3.   Cost of Attendance for Willing Witnesses Weighs Against Transfer ......................... 13

      4.   All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive Weigh Against Transfer .................. 13

   B.    The Public Interest Factors Weigh Against Transfer .................................................. 14

      1.   Administrative Difficulties Flowing from Court Congestion Weigh Against Transfer .................. 14

      2.   The Local Interest in Having Localized Interests Decided at Home Weighs Against Transfer .................. 15

      3.   Familiarity of the Forum with the Law That Governs the Case and the Avoidance of Unnecessary Problems of Conflict of Laws Do Not Favor Transfer .................. 15

IV.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*AT&T Intel. Prop. I, L.P. v. Airbiquity Inc.*, Case No. 3:08-CV-1637-M, 2009 WL 774350
(N.D. Tex. Mar. 24, 2009) ........................................................................................1

*Comcam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-cv-798-JRG (E.D. Tex. Aug. 26, 2014) .............13

*EMG Technology, LLC v. Chrysler Group, LLC*, No. 6:12-cv-259-MHS (E.D. Tex. Mar.
28, 2013) ..................................................................................................................5

*Gates Learjet Corp v. Jenson*, 743 F.2d 1325 (9th Cir. 1984) ......................................................14

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y.
1970) ........................................................................................................................5

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ................................................................14

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 1998) .........................................................1

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-CV-0015-JRG (E.D. Tex.
Aug. 1, 2014) .......................................................................................................1, 12

*Texas Data Co., LLC v. Target Brands, Inc.*, 771 F.Supp.2d 630 (E.D. Tex. 2011) .......................1

*Thomas Swan & Co., Ltd. v. Finisar Corp.*, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014) .......12

*VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG (E.D. Tex, Jan. 31,
2014) ......................................................................................................................12


**Rules**

Fed. R. Civ. P. 45(a)(2) .............................................................................................................12

Fed. R. Civ. P. 45(c)(1)(A) .......................................................................................................12

Fed. R. Civ. P. 45(c)(1)(B) .......................................................................................................12

# TABLE OF EXHIBITS

Exhibit A      Declaration of Patrick Zuili

Exhibit B      Declaration of Michael J. Collins

Exhibit C      Declaration of John R. Kasha

Exhibit D      Declaration of Dr. Gregory J. Gonsalves

Exhibit E      Declaration of Robert D. Katz

Exhibit F      Documents Relating to Other Relevant Click Fraud Litigation

Exhibit G      Documents Containing Website Pages and Witness Location Information from Tracers Information Specialists

Plaintiff Brite Smart Corp. ("Brite Smart") submits this Response to the Motion to Transfer Venue of Defendant Google Inc. ("Google") and would respectfully show the Court as follows:

## I. INTRODUCTION

A party "who seeks the transfer must show good cause" and, to do so, must "demonstrate[] that the transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 1998) (emphasis added). This burden, which the Fifth Circuit "does not take [] lightly," gives the appropriate deference to a plaintiff's choice of forum. *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F.Supp.2d 630, 636, 638 (E.D. Tex. 2011). If the Defendant fails to satisfy this burden, "the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. The burden on the party seeking transfer is significant and must show that the transferee forum is clearly more convenient. *See AT&T Intel. Prop. I, L.P. v. Airbiquity Inc.*, Case No. 3:08-CV-1637-M, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (denying motion to transfer venue where transferee venue was not clearly more convenient even though defendant demonstrated that transferee forum was more convenient than transferor venue).

In sum, Google has not shown that the Northern District of California ("NDCA") is "clearly more convenient" than this District. Defendant's motion does nothing more than attempt to shift inconvenience – to the extent there is any in the first place – from one party to another. As numerous cases in this District hold, a defendant's motion to transfer must be denied under such circumstances. *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-CV-0015-JRG (E.D. Tex. Aug. 1, 2014) *citing Thomas Swan & Co., Ltd. v. Finisar Corp.*, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). For these reasons, and as discussed more fully below, this Court should deny Google's motion to transfer.

## II. BACKGROUND

### A. The Eastern District of Texas is Clearly More Convenient for Brite Smart

Brite Smart's principal, and only, office is located in Tyler, Texas. Ex. B, Collins Decl. at ¶2. Mr. Michael J. Collins is the vice president for Brite Smart. *Id.* at ¶1. Defendant's intimations regarding Brite Smart's organization are of no moment. Mr. Collins is free to be concurrently employed in other occupations while also performing duties as vice president of Brite Smart. On the one hand, Defendant states that it intends to rely on a laches defense, in effect criticizing Brite Smart for not having enforced its intellectual property rights sooner, while on the other hand Defendant attacks Brite Smart for hiring a manager with intellectual property experience to assist it with enforcing its patents. *See* Mot. at 9. That Defendant identifies Mr. Collins' other employment as a private investigator is a distinction without a difference. *See* Mot. at 2. Similarly, that one of Brite Smart's counsel has represented other organizations managed by Mr. Collins in the past evinces nothing more than an established attorney-client relationship with no relevance to the venue analysis in this case.

#### 1. Brite Smart's Party Witnesses

Mr. Collins, Brite Smart's vice president, has relevant knowledge regarding the instant suit, including knowledge of Brite Smart's corporate organization and structure, the operations of Brite Smart, locations of relevant documents, knowledge regarding the patents-in-suit, and invaluable experience with the licensing of intellectual property. Ex. B, Collins Decl. at ¶1. Mr. Collins has lived in the Eastern District of Texas ("EDTX") for his entire life of 43 years and currently resides in Tyler, Texas. *Id.* at ¶2. As such, Marshall is a far more convenient venue for Mr. Collins. *Id.* at ¶5. Brite Smart anticipates that Mr. Collins will be Brite Smart's Fed. R. Civ. P. 30(b)(6) witness, and expects Mr. Collins to testify at trial. *Id.* at ¶4.

Mr. Patrick Zuili, the inventor of the patents-in-suit, resides in Boca Raton, Florida. Ex.

A, Zuili Decl. ¶2.  Marshall, Texas is also a far more convenient venue for Mr. Zuili than NDCA. *Id*. at ¶3; Ex. E Katz Decl ¶2.

### 2.  Brite Smart's Documents

Brite Smart's physical paper files are stored at Brite Smart's principal office in Tyler, Texas.  Ex. B, Collins Decl. at ¶8.  Brite Smart's hardcopy files include, for example, patent documents including copies, originals and certified copies, as well as organizational and operational documents relating to its day-to-day activities.  *Id*.  Brite Smart's electronic documents are stored on computers located in Brite Smart's principal office in Tyler.  *Id*. at ¶7. Brite Smart's electronic documents include, for example, the file histories of the patents-in-suit and technical documents relating to the accused instrumentalities.  *Id.*  None of Brite Smart's documents are located in NDCA.  *Id*. at ¶9.

### 3.  Brite Smart's "Non-Party" Witnesses

The patents-in-suit generally claim a pay-per-click engine, sometimes in conjunction with a search engine, and a method of detecting invalid or fraudulent clicks.  Potential technical witnesses will have knowledge of pay-per-click ("PPC" or "CPC" – cost per click) systems and/or click fraud detection mechanisms.  Google's PPC system is known as "AdWords".  Brite Smart's potential non-party witnesses have relevant information regarding: (1) the state of the art of click fraud detection techniques at the time of the invention; (2) Google's implementation of click fraud techniques, if any, at the time of the invention; and (3) damages.

#### a)  "State of the Art" Witnesses[1]

Brite Smart identifies four individuals with relevant knowledge of the state of the art of click fraud detection techniques at the time of the invention:[2] (1) Ron Rippy of Austin, Texas;

---

[1] The list of Brite Smart's "State of the Art" witnesses is summarized in Ex. E, Katz Decl. ¶7.

[2] The priority date appearing on the face of the patents-in-suit is February 7, 2003.  Dkt. 1, Exs. A, B, C, D.

(2) Tom Cuthbert of San Antonio, Texas; (3) Dwight Merriman of New York City; and (4) Jeffrey Brewer of New York City. Their backgrounds are summarized at Ex. E, Katz Decl. ¶7.

### b) "Google's 2003 Implementation" Witnesses[3]

Lane's Gifts and Collectibles, L.L.C., located in Texarkana, Arkansas,[4] sued Google in 2005 in a landmark click-fraud case and alleged, on behalf of itself and a similarly-situated class that Google had overcharged their PPC advertising customers by failing to filter out invalid clicks. *See* Ex. E, Katz Decl. ¶3. Lane's Gifts has knowledge of facts relevant to click-fraud filtering techniques in use at Google prior to 2005, as well as damages factors, discussed below.

Another relevant non-party is Dr. Alexander Tuzhilin, who was appointed to assist the *Lane's Gifts* court in 2005-2006 by interviewing several employees at Google's campus and authoring an independent technology audit to evaluate Google's click fraud detection efforts. *Id.* Dr. Tuzhilin, who resides and works in New York City, has detailed knowledge of the click-fraud detection techniques in use at Google prior to 2006. *See* Ex. E, Katz Decl. ¶¶3, 33.

Two other relevant non-party witnesses are Click Defense, based in Fort Collins, Colorado, and Advanced Internet Technologies, Inc. ("AIT"), based in Fayetteville, North Carolina. *See* Ex. E, Katz Decl. ¶5. Based on its investigation, Click Defense alleged that click fraud was "rampant" in its 2005 complaint against Google. *Id.*; *see also* Ex. F at F-81 ¶¶39-40 AIT's Clarence Briggs testified in 2005 that AIT's investigation had revealed that it was routinely charged for "literally thousands of fraudulent clicks." *Id.*; *see also* Ex. F at F-90 ¶2.

### c) Damages Witnesses[5]

Relevant potential witnesses for damages issues may have knowledge regarding the prevalence of invalid (or fraudulent) clicks that are introduced into Google's AdWords system,

---

[3] The list of Brite Smart's "Google's 2003 Implementation" witnesses is summarized in Ex. E, Katz Decl. ¶8.
[4] Lane's Gifts is well within 100 miles of this Court. Ex. E, Katz Decl. ¶12.
[5] The list of Brite Smart's damages witnesses is summarized in Ex. E, Katz Decl. ¶¶9-10.

the fraction of invalid clicks that are filtered out by the systems and methods described by the patents-in-suit, and the value or importance of an invalid click filter to AdWords customers. Such witnesses include employees of non-party businesses that provide ad analytics and optimization for the online advertising community. Google certifies such potential witnesses as "Google Certified PPC Professionals." In addition, there are non-party click-fraud specialists who work as employees within enterprises or as independent companies on behalf of small and medium-size businesses who identify invalid clicks. Finally, there are the AdWords customers themselves who are cognizant of their conversion rates for PPC advertising. These three categories of witnesses are knowledgeable of facts relevant to the *Georgia-Pacific* factors for a reasonable royalty, such as those relating to the utility and advantages of identifying invalid clicks involving PPC advertising (factor 9), and to the promotion and value of the accused methods and systems (factor 10). *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Brite Smart plans to use some of these witnesses to establish the causal nexus between the features covered by the patents-in-suit and the consumer demand for AdWords. Plaintiffs are to be given deference as to the witnesses they choose to call to establish their proofs at trial, and such witnesses are an important component of the transfer analysis. *See EMG Technology, LLC v. Chrysler Group, LLC*, No. 6:12-cv-259-MHS at 4-7 (E.D. Tex. Mar. 28, 2013).

Brite Smart's has identified the following numbers of potential non-party witnesses: (1) four witnesses (two in Texas and two in New York) having knowledge of the state of the art of click fraud detection techniques at the time of the invention; (2) three organizations and one professor (Texarkana, Arkansas; Fort Collins, Colorado; Fayetteville, North Carolina; and New York City) having knowledge of Google's implementation of click fraud techniques, if any, at

the time of the invention; and (3) five providers of Internet advertising optimization and analytics (within this District) and five AdWords users (also within this District) with knowledge of facts involving the *Georgia-Pacific* factors relating to damages. *See* Ex. E, Katz Decl. ¶¶10-14.

**B.    Defendant Overstates its Claim of Convenience in NDCA**

**1.    Defendant's Party Witnesses**

First, Google sets forth the identity of witnesses that "may be expected to testify" regarding claims of Google's infringement. Dubey Decl.¶7 (Dkt. 18-1). However, Google failed to set forth the location and identity of Google employees relating to damages or potential prior art. Google searched for employees having "relevant business and financial information" but failed to identify any witnesses except technical employees in Google's Ad Traffic Quality Team. *Id.* at ¶4, 7. Google failed to identify employees having relevant information regarding prior art.[6] None of the witnesses Google identified (1) worked at Google before the patents' priority date, or (2) had knowledge of relevant prior art before joining Google.[7]

In sum, none of the Defendant's employees identified as potential witnesses have relevant information regarding potential prior art systems. To the extent that Defendant chooses to use these employees as non-infringement witnesses, Brite Smart would point out that (1) the parties' technical experts' will likely constitute the primary testimony at trial and (2) the employees are under the Defendant's control and thus are available to testify anywhere.

In addition, while Google states that its "click fraud detection-related *development* occurs in the NDCA", Defendant overlooks its very recent and highly relevant Google purchase of

---

[6] The priority date of the patents-in-suit is February 7, 2003. Dkt. 1, Exs. A, B, C, D.

[7] Google identified David Turner as a potential witness, but Mr. Turner began working for Google in 2006. *See* Google's Turner Decl. ¶1 (Dkt. 18-2). Google also identified Razvan Surdulescu as a potential witness, but Mr. Surdulescu began working for Google in 2005. *See* Ex. E, Katz Decl. at ¶36; *see also* Ex. G at G102-106. Similarly, Per Bjorke, also identified by Google, began working for Google only a year ago. *See* Ex. E, Katz Decl. at ¶37; *see also* Ex. G at G97-101.

Adometry (formerly Click Forensics), a company based in Austin, Texas with deep roots in click fraud detection. *See* Ex. E, Katz Decl. ¶11; *see also* Ex. G at G1-15.

### 2. Defendant's "Non-Party" Witnesses

Google has cherry-picked some former employees that live in NDCA, and claims that they may have relevant information. However, these former employees likely possess little relevant information. As for infringement, the relevant time period begins on July 10, 2008, six years prior to the filing of Brite Smart's complaint. Of the Defendant's former employees, Mr. Ghosemajumder left Google in 2010, Mr. Daswani left in 2008, and Mr. Stoppelman left in 2007. *See* Ex. E, Katz Decl. ¶¶24-26; *see also* Ex. G at G107-126. In addition, any suggestion that the former employees have relevant knowledge of potential prior art is questionable, as the court-appointed expert who investigated Google's click-fraud detection methods in 2006 stated that none of the team members at Google that he interviewed "were even around or involved in the click fraud effort when the AdWords program was introduced in February 2002. *See* Ex. E, Katz Decl. ¶3; *see also* Ex. F at F44.[8] Thus, the former employees identified who live in NDCA have little, if any, relevant information, and are unlikely to be called as witnesses at trial.

Defendant provides no support for its claim that "California is the epicenter of the PPC search engine industry". Mot. at 5. Similarly, Defendant provides no support for its claim that the PPC advertisers and advertising platforms that it identified "developed and implemented schemes to identify and combat click fraud."[9] *Id.* It only identifies particular organizations or persons in the online advertising industry that are located in California. Google fails to cite to

---

[8] Dr. Alexander Tuzhilin was appointed to assist the court as an independent expert in *Lane's Gifts and Collectibles, et al. v. Yahoo, et al*, No. CV-2005-52-1 (Ark. Cir. Ct.). In connection with his investigation, Dr. Tuzhilin visited Google's campus on multiple occasions and interviewed several of Google's employees. See Tuzhilin Report at p. 1. Dr. Tuzhilin, who is a professor at New York University (NYU) and holds a PhD in Computer Science, published his report in July 2006.
[9] Google relies heavily on the Interactive Advertising Bureau ("IAB"). Mot. at 5, n.4. However, the IAB is based in New York City, which is closer to EDTX than NDCA. *See* Ex. E, Katz Decl. at ¶38; *see also* Ex. G at G232-236.

biographies, patents or publications that would tend to show that such persons or organizations would actually possess any knowledge of potential prior art. Instead, Google merely proffers the opinion of one of its lawyers that the listed companies "have invented or implemented potentially invalidating prior art." *See* Google's Lee Decl. ¶14 (Dkt. 18-4).

### C. Patent Prosecution Witnesses

Four non-parties performed prosecution activities on the patents-in-suit. Defendant only cited the one who resides in California.[10] *See* Mot. at 4, 8. EDTX is much more convenient to the other three. *See* Ex. E, Katz Decl. at ¶¶7-9. John R. Kasha lives in North Potomac, Maryland, and states that Marshall is more convenient. Ex. C, Kasha Decl. at ¶¶4-5. Dr. Gregory J. Gonsalves resides in Falls Church, Virginia and states that Marshall is more convenient. Ex. D, Gonsalves Decl. at ¶¶4-5. John G. Posa works in Ann Arbor, Michigan which is much closer to Marshall than San Francisco. *See* Ex, E, Katz Decl. at ¶8.

## III. ARGUMENT[11]

### A. The Private Interest Factors Weigh Against Transfer or Are Neutral

In determining whether to transfer venue, the court must balance several "private" and "public" interest factors. "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II*, 545 F.3d at 315. None of these factors favors transfer.

---

[10] Defendant cited only Joe Zheng, who participated in the prosecution of the '104 patent for only six months (Sep. 11, 2006 – March 11, 2007) and only initially filed the application that led to the '667 patent on July 23, 2007.
[11] As a preliminary matter, Brite Smart does not dispute that this action could have been brought in NDCA.

## 1. The Relative Ease of Access to Sources of Proof Weighs Against Transfer

As detailed below, Defendant has failed to "identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties." *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*, 2013 WL 1363613 at *2 (E.D. Tex. Apr. 2, 2013).

### a) Documents

While it is true that in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer, in this case, this aspect does not favor transfer because (1) Defendant does not allege that their documents are physically located in NDCA, but instead states that they are "located in, or accessible from, Mountain View";[12] (2) Defendant does not state that the servers which host its electronic documents are located in NDCA;[13] (3) Defendant fails to identify any documents that it would need to support any of its defenses; and (4) Defendant states that its documents regarding the relevant technology "are hosted on Google's various secure servers, which are accessible from anywhere.[14] Moreover, it is highly unlikely that Defendant possesses any prior art documents based on Dr. Tuzhilin's comments that his 2006 click fraud investigation at Google was not assisted by documents provided by Google. *See* Ex. E, Katz Decl. ¶3; *see also* Ex. F at F-44.

In contrast, Brite Smart has identified specific categories of both physical and electronic documents located in EDTX. *See supra* §II.A.2 (p. 3). Thus, this aspect weighs against transfer.

### b) Party Witnesses

Defendant identifies party witnesses familiar with click fraud development in NDCA. While Defendant's potential witnesses may be familiar with facts relating to infringement, their

---

[12] Mot. at 7.
[13] According to its website, it has no data centers in California. *See* Ex. E, Katz Decl. ¶36; *see also* Ex. G at G229.
[14] Mot. at 4.

tenure militates against their familiarity with potential prior art as explained above. In addition, Defendant fails to include its potential witnesses located in Austin, Texas acquired in connection with its recent Adometry purchase. While, NDCA may be more convenient overall for Google's party witnesses, EDTX is more convenient for Brite Smart's party witnesses. *See* Ex. A, Zuili Decl.; Ex. B, Collins Decl. Thus, this aspect weighs against transfer or is at least neutral.

### c) Non-Party Witnesses

In its brief, Defendant identifies three categories of non-party witnesses: (1) patent prosecution witnesses, (2) former Google employees working for their Ad Traffic Quality Team, and (3) entities and witnesses associated with prior art systems.

First, Defendant identifies only one patent prosecution witness, Joe Zheng, who Defendant stated may testify regarding prosecution history estoppels. Mot. at 8. Putting aside the fact that Mr. Zheng only performed prosecution activities for six months where the totality of such prosecution has been ongoing for over a decade, the complete data clearly reveals that EDTX is a much more convenient venue overall for the third-party patent prosecution witnesses. *See supra* §II.C (p. 8); *see also* Ex. E, Katz Decl. ¶¶7-9.

Second, Defendant identifies three specific former employees that still reside in NDCA. The prospect that Google would call these former employees as witnesses is particularly low in light of the fact that all of these individuals were presumably working at Google when Dr. Tuzhilin visited Google's campus (three times), yet his report stated that "none of the team members I interviewed were even around or involved in the click fraud effort when the AdWords program was introduced in February 2002." *See supra* §II.B.2 (p. 7); *see also* Ex. F at F-44. Defendant also has failed to explain why the testimony of its former employees would not be duplicative of testimony available from any of its eighty current Ad Traffic Quality engineers worldwide. *Cf.* Mot. at 3.

Third, Defendant identifies specific "entities and witnesses associated with prior art systems" near NDCA. The relevance of the entities is unclear. For example, Amazon.com Inc. is identified as "an e-commerce company" and Expedia Inc. is identified as an "Internet-based travel website company." Defendant merely identifies random technology companies in the NDCA area to skew the venue analysis. *See* Google's Ex. D, Lee Decl. ¶14 (Dkt. 18-4).

On the other hand, Brite Smart has identified: (1) five witnesses relevant to the state of the art relating to click fraud detection at the time of the invention (Ex. E, Katz Decl. ¶10);[15] (2) five witnesses having knowledge of Google's 2003 implementation of AdWords and its click-fraud filtering capabilities (*id.* at ¶11);[16] (3) seven providers of advertising analytics and optimization for the inline advertising community and who are potential witnesses having knowledge of facts relevant to the *Georgia-Pacific* factors for a reasonable royalty (*id.* at ¶12);[17] and (4) eight current AdWords customers who also are potential witnesses relevant to the *Georgia-Pacific* factors for a reasonable royalty (*id.* at ¶13).[18] In sum, thirteen witnesses are within EDTX; an additional one is located with 100 miles of this Court; an additional four are located in Texas; and the remaining seven are closer to Marshall than San Francisco. *See* Ex. E, Katz Decl. at ¶¶10-14.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for

---

[15] Ron Rippy (Austin, TX); Tom Cuthbert (San Antonio, TX); Dwight Merriman (New York, NY); Jeffrey Brewer (New York, NY); and Erick Bright (Orlando, FL).

[16] Lane's Gifts and Collectibles, L.L.C. (Texarkana, AR); Dr. Alex Tuzhilin (New York, NY); Lawrence E. Feldman (Elkins Park, PA); Click Defense, Inc. (Fort Collins, CO); and Advanced Internet Technologies, Inc. (Fayetteville, NC).

[17] Wright IMC, LLC (Plano, TX); Advice Interactive Group, LLC (McKinney, TX); Advocate Digital Media (Longview, TX); KeyRelevance, LLC (Lucas, TX); VeriClix (Dallas, TX); RankHammer, LLC (Dallas, TX); and Online Performance Marketing, L.P. (Richardson, TX).

[18] Pyramid Homes (Flint, TX); Price Law (Sulphur Springs, TX); Bill McRae Ford, Inc. (Jacksonville, TX); Loncar & Associates, Attorneys at Law (Tyler, TX); French Peas Flower Shop (Tyler, TX); Rome Arata & Baxley L.L.C. (Pearland, TX); Peltier Chevrolet, Inc. (Tyler, TX); Friedman Law Office (Texarkana, TX).

willing witnesses. *Cf. Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-CV-0015-JRG (E.D. Tex. Aug. 1, 2014).

Thus overall, the non-party witness aspect is neutral or weighs against transfer. In sum, the ease of access to sources of proof factor also weighs against transfer.

### 2. The Availability of Compulsory Process Weighs Against Transfer or is Neutral

Under Rule 45(c)(1)(A), neither this Court nor NDCA may command all identified non-party witnesses to attend trial. But both courts can compel testimony by deposition. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). Given that Defendant is headquartered in NDCA right where it claims that its relevant non-party witnesses reside, it can hardly argue that taking these witnesses' deposition in NDCA would impose any sort of inconvenience on its part. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG (E.D. Tex, Jan. 31, 2014). Moreover, Defendant has failed to explain how they would be inconvenienced by presenting the non-party witnesses' deposition testimony at trial. *See id*.

Moreover, Brite Smart has identified several witnesses relating to technical and damages issues that are within the subpoena power of this Court. *See* Ex. E, Katz Decl. ¶¶10-13. This Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B).

While it is apparent that the identity and location of the third-party witnesses are speculative at this stage in the litigation, it is also apparent that unlike *Volkswagen II*, this case presents a situation where no one district will have absolute subpoena power over all non-party witnesses. Accordingly, this factor is neutral or weighs against transfer.

### 3. Cost of Attendance for Willing Witnesses Weighs Against Transfer

As a threshold matter, Defendant does not identify any third-party witness who would be "willing" to testify at trial. Mot. at 11-12. In addition, Defendant cannot carry their burden to show that this factor favors transfer because (1) Brite Smart has demonstrated that EDTX is more convenient to the non-party patent prosecution witnesses; (2) potential prior art witnesses are scattered across the country; (3) Brite Smart has identified several technical and damages witnesses that reside in or near EDTX. At most, Defendant can only demonstrate that granting its motion would serve to transfer the inconvenience from Google's witnesses to Brite Smart's witnesses, which is insufficient to shift this factor in favor of the transferee venue.

Moreover, considering this Court's practice of holding short, streamlined trials, convenience considerations also favor denial of transfer. A short trial will reduce the inconvenience and time away from the office for witnesses who must attend the entire trial.

Finally, several non-party witnesses, including those identified by Defendant, do not reside in either District, and will be required to travel in any case. Given the realities of trial, such witnesses will certainly incur travel expenses. Those expenses as related to both meals and lodging will be unarguably and substantially higher in San Francisco, than in Marshall, Texas.[19] *See Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376-JRG (E.D. Tex. Apr. 24, 2014).

Thus, this factor weighs against transfer.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive Weigh Against Transfer

Defendant sets forth no "rare and special circumstances" whereby this case will suffer delay or prejudice by remaining in this District. Another concern with the transfer is the potential for significant delay to the parties in getting back on schedule for a trial date in the

---

[19] The GSA FY 2015 per diem rates for lodging and meals for San Francisco and Marshall are $290 and $129 respectively. *See* http://www.gsa.gov/portal/category/100120, accessed November 3, 2014.

transferee district. Motions to transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute.

In addition, (1) this Court has held a scheduling conference and assigned a trial date; and (2) Brite Smart has served its P.R. 3-1 & 3-2 Infringement Contentions; and (3) the parties will likely have initiated discovery and submitted proposed docket control, discovery, and protective orders before briefing on this motion is complete. Thus, this factor weighs against transfer.

### B. The Public Interest Factors Weigh Against Transfer

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law. *Volkswagen II*, 545 F.3d at 315.

### 1. Administrative Difficulties Flowing from Court Congestion Weigh Against Transfer

In considering this factor, the speed with which a case can come to trial and be resolved may be a factor. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (*citing Gates Learjet Corp v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")). Statistics for the 12-month period ending in June 30, 2014 indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 27.9 months, as compared to 31.0 months in the Northern District of California. *See* Ex. E, Katz Decl. ¶37; *see also* Ex. G at G229-230. In addition, the total time to trial would likely be even longer than average if this case were transferred because it would have to start behind other litigants in the transferee district.

More important is the fact that a *Markman* hearing in this case has already been scheduled for June 30, 2015 and jury selection is scheduled for January 11, 2016. Trial is less than 14 months away. It is unlikely – if not impossible – that a District Judge in NDCA will be able to receive this case (if transferred), set a scheduling conference, and provide the parties with *Markman* and jury selection dates anywhere close to those already established in this District. Accordingly, this factor weighs heavily against transfer.

### 2. The Local Interest in Having Localized Interests Decided at Home Weighs Against Transfer

Defendant's localized interest assertions are undercut by (1) Defendant's statement that its Ad Traffic Quality Team is dispersed between Mountain View, Zurich, and London;[20] (2) Defendant's presence in more than 70 offices in more than 40 countries;[21] and (3) the substantial volume of AdWords business that it conducts in Texas. NDCA does not have a greater localized interest in this case than EDTX. Brite Smart is headquartered in and has witnesses and evidence in EDTX. The residents of EDTX have a legitimate local interest in the enforcement of patents owned by a resident business. This factor weighs strongly against transfer.

### 3. Familiarity of the Forum with the Law That Governs the Case and the Avoidance of Unnecessary Problems of Conflict of Laws Do Not Favor Transfer

Defendant does not allege that these factors favor transfer. They do not.

## IV. CONCLUSION

The private and public interest factors weigh against transfer. Google has failed to carry its burden of showing that the Northern District of California is a clearly more convenient venue for this dispute than the Eastern District of Texas. Accordingly, its motion should be denied.

---

[20] *See* Turner Decl. ¶6 (Dkt. 18-2).
[21] http://www.google.com/about/company/facts/locations/, accessed November 3, 2014.

Dated: November 10, 2014

Respectfully submitted,

/s/*Robert D. Katz*
Robert D. Katz
Lead Counsel
Texas Bar No. 24057936
**KATZ PLLC**
6060 N. Central Expressway, Suite 560
Dallas, TX 75206
(214) 865-8000
rkatz@katzlawpllc.com

Stafford Davis
Texas Bar No. 24054605
**THE STAFFORD DAVIS FIRM, PC**
305 South Broadway
Suite 406
Tyler, TX 75702
(903) 593-7000
sdavis@stafforddavisfirm.com

**ATTORNEYS FOR PLAINTIFF
BRITE SMART CORP.**

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on the date above. Any other counsel of record will be served by electronic mail.

/s/ *Robert D. Katz*
Robert D. Katz