**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BRITE SMART CORP, <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE INC., <br><br> Defendant. | 2:14-cv-00760-JRG |

**GOOGLE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER
VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C.
§ 1404(A)**

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | ................................................ | Error! Bookmark not defined. |
| II. | ARGUMENT | ................................................................................................ | 1 |
| | A. | Plaintiff's Choice of Forum Should Be Given Little Weight ................................ | 1 |
| | B. | Ease of Access to Sources of Proof Overwhelmingly Support Transfer to the NDCA ............................................................................................................ | 2 |
| | C. | Availability of Compulsory Process Over Google Former Employees, Prosecuting Attorney, and Key Prior Art Witnesses Strongly Favors Transfer to the NDCA | 3 |
| | D. | Cost of Attendance for Willing Witnesses Favors Transfer to the NDCA ............. | 4 |
| | E. | Court Congestion is Neutral ................................................................................ | 5 |
| | F. | Localized Interest Favors Transfer ..................................................................... | 5 |
| III. | CONCLUSION | ............................................................................................... | 5 |

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*In re EMC Corp.*, 501 Fed. Appx. 973 (Fed. Cir. 2013) ................................................................ 5

*In re Genentech, Inc.,* 566 F.3d 1338 (Fed. Cir. 2009) ........................................................... 1, 3, 5

*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ................................................ 2, 3

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) ................................................................ 1

*In re Nintendo Co. Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) ............................................................. 5

*In re Toyota Motor Corp.*, 747 F.3d 1338 (Fed. Cir. 2014) ................................................. passim

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ......................................................... 1

*In re Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 1998) .................................................. 1, 3

*In re Zimmer Holdings, Inc*., 609 F.3d 1378 (Fed. Cir. 2010) ................................................. 1, 2

*Indus. Tech. Research Inst. V. LG Corp.*, 2011 U.S. Dist. LEXIS 154778 (E.D. Tex. Nov. 29, 2011) ........................................................................................................................... 4

*Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376-JRG (E.D. Tex. Apr. 24, 2014) ................. 5

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-cv-15-JRG (E.D. Tex. Aug. 1, 2014) ........................................................................................................................... 1

*Ventronics Sys., LLC v. Drager Med. GmbH*, 2011 U.S. Dist. LEXIS 154793 (E.D. Tex. Oct. 20, 2011) ........................................................................................................................... 4

Brite Smart's Opposition (D.I. 27) exposes its thinly-veiled attempt at manipulating venue that is neither supported by law nor facts. Brite Smart ignores the entire line of Federal Circuit precedent ordering transfer out of the Eastern District of Texas ("EDTX") under similar circumstances, namely, where the plaintiff recently opens an office in a forum or where plaintiff shares its office, its officer, or its litigation counsel with numerous other companies.[1] Brite Smart does not cite a single Federal Circuit or Fifth Circuit[2] case in its brief, other than two instances of general propositions regarding venue analysis.[3] Instead, Brite Smart relies mostly on unpublished opinions from the EDTX, one of which was vacated recently[4] and most of which are distinguishable. Brite Smart's attempt to manufacture presence and local interest in this district falls flat. Despite identifying a slew of witnesses who allegedly have relevant information, only half are in the EDTX and none with materially relevant information exists in the EDTX.

I. ARGUMENT

As an initial matter, Brite Smart does not refute that the claims of the asserted patents target Google's click fraud detection services, rather than Google's search engine, AdWords, AdSense, or DoubleClick. This is very important because it further bolsters Google's position that the most relevant witnesses reside in NDCA.

### A. Plaintiff's Choice of Forum Should Be Given No Additional Weight

Brite Smart argues that Google is merely "shift[ing] inconvenience . . . from one party to another" and, as plaintiff, it should get their choice of forum. However, "Fifth Circuit precedent

---

[1] *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc*., 609 F.3d 1378, 1381-82 (Fed. Cir. 2010).
[2] The Federal Circuit handles patent case. In transfer motions, the Federal Circuit applies the regional circuit law.
[3] D.I. 27, at 14 (citing *In re Genentech, Inc.,* 566 F.3d 1338 (Fed. Cir. 2009)); *id*. at 1, 8, 12, and 14 (citing *In re Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 1998)).
[4] In *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-cv-15-JRG (E.D. Tex. Aug. 1, 2014), which Brite Smart cites in their Opposition Brief (D.I. 27, at 1), Judge Gilstrap later withdrew his denial of transfer order and granted transfer. *Id.* (Oct. 27, 2014).

1

clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."[5] Contrary to Brite Smart's assertion and its reliance on an EDTX case concerning false patent marking, the Federal Circuit made it clear that a "show[ing] that the transferee forum is *far* more convenient . . . is not what is required."[6]

Brite Smart's Tyler office is superficial. Brite Smart opened it two months before filing this suit, and Brite Smart had operated in Florida for more than a decade prior. The facts contained in the declaration of Mr. Collins, who Brite Smart hired two months prior to filing this suit—*e.g.*, setting up Brite Smart's website, maintaining Brite Smart's corporate and tax documents and registrations—all evidence an intent to set up a shell or sham corporation for the sole purpose of creating an aura of proper venue. Notably absent from Mr. Collins' declaration are: (i) whether there are any other employees—there are none; (ii) whether there is an ongoing business, besides licensing—there is none; (iii) whether there are any other documents besides those that Brite Smart needed to set up the corporation and file suit—there are none.[7] (*See Id.*)

### B.   Ease of Access to Sources of Proof Overwhelmingly Support Transfer to the NDCA

Google identifies a total of 32 relevant witnesses (3 party witnesses and 29 non-party witnesses), most (22) of whom are located in the NDCA and the rest located close to the NDCA. In response, Brite Smart identifies a total of 30 witnesses (2 party witnesses and 28 non-party witnesses), fewer than half of whom are located in the EDTX.

Brite Smart's attempt to discount the weight of the six current and former Google employee witnesses falls short. Contrary to what Brite Smart suggests, there is no requirement in venue

---

[5] *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).
[6] *Toyota*, 747 F.3d at 1341 (emphasis in original).
[7] To the extent any of the documents Brite Smart identified were created in, or moved to, the EDTX in anticipation of litigation, they should be considered legal "fiction" and should be given little, if any, weight in establishing Brite Smart's connection to the EDTX. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009); *see also Zimmer*, 609 F.3d at 1381-82 (ordering transfer out of the EDTX, where the plaintiff had transferred documents to the EDTX office in anticipation of litigation).

analysis that a party identify witnesses who will *definitely* testify in the case or that a party identify an *employee* witness with relevant knowledge of the prior art.[8] Indeed, Brite Smart does not cite to any authority to support its allegations.

Google's purchase of Adometry, an Austin-based company that provides click forensics services, is irrelevant here, because Adometry is not involved in Google's online click fraud detection services accused in this case. (D.I. 18, at 5-6.) Furthermore, Adometry is nearly a five hour drive to Marshall, Texas, but only a three-and-a-half hour flight to the NDCA.

C. **Availability of Compulsory Process Over Google Former Employees, Prosecuting Attorney, and Key Prior Art Witnesses Strongly Favors Transfer to the NDCA**

Brite Smart does not identify a single non-party witness[9] in the EDTX, other than 15 "damages witnesses". (D.I. 27, at 4-5.) These "witnesses," however, do not have any unique knowledge or information not known to any witness identified by Google, and indeed, as Brite Smart admits, many obtained their knowledge from Google sources. Brite Smart has not shown that they have the experience and knowledge to competently testify at trial regarding the subject matter at issue, and indeed, Brite Smart does not allege that any of their testimonies will be needed at trial. Moreover, to some extent, Brite Smart argues that the EDTX is more convenient because it is centrally located for the non-party witnesses that Brite Smart identified (*e.g.*, MD, VA, MI, NY, FL, AR, PA, NC, and CO). (*See id.* at 12.) However, the Federal Circuit has repeatedly rejected this "central locality" approach in transfer analysis.[10]

Google identifies 3 "similarly situated third-party witnesses" in the NDCA, who are Google

---

[8] *See Toyota*, 747 F.3d at 1340 (determining that "it appears undisputed that a number of witnesses in the [transferee forum] have knowledge potentially relevant to infringement and validity issues, even if it is not possible at present to specify further just how material their testimony might be to the yet-undeveloped issues in the case").
[9] The proper focus for this factor is on nonparty witnesses. *See Volkswagen II*, 545 F.3d at 316. The Court should "assess the relevance and materiality of the information the witness may provide." *Genentech*, 566 F.3d at 1343-44.
[10] *Genentech*, 566 F.3d at 1344 (holding that "the district court improperly used its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue", where there was no witness in the EDTX); *see also Hoffmann-La Roche*, 587 F.3d at 1335-38, (rejecting the district court's argument that "this was a 'decentralized' case given the various locations of the potential witnesses and that transfer would merely shift inconveniences").

AdWords certified individuals and/or AdWords users and who have as much knowledge regarding remedy issues as the 15 "damages witnesses" that Brite Smart identifies.[11] When "indistinguishable" and "similarly situated witnesses" are available to testify in the transferee forum, the identification of witnesses in Texas becomes inconsequential.[12] Therefore, the presence of the three former Google employees in the NDCA—the only non-party witnesses having unique and highly relevant information—clearly tips the scale in favor of transfer to the NDCA.

Brite Smart's conclusion that the three former Google employees likely possess little relevant information regarding non-infringement is misplaced. Brite Smart seems most concerned with the purported lack of Google documents predating 2003. (D.I. 27, at 9-10.) But, assuming this is correct, it undercuts further Brite Smart's argument against considering these former employees (all of whom were involved in the initial design and implementation of Google's click fraud detection features) because a lack of documentation would make these former employees' knowledge and testimony that much more necessary.

### D. Cost of Attendance for Willing Witnesses Favors Transfer to the NDCA

Brite Smart's argument regarding the cost of attendance factor has little merit. First, Brite Smart argues that "potential prior art witnesses are scattered across the country"; "that the identity and location of the third-party witnesses are speculative at this stage in litigation"; and that "several non-party witnesses . . . do not reside in either district, and will be required to travel in any case." (D.I. 27, at 12-13.) Second, the case upon which Brite Smart relies cuts against Brite Smart's position, to the extent that, in that case, this Court found that this factor weighs in favor of transfer

---

[11] Ex. A, filed in support of Google's reply; Supplemental Declaration of Jeong Ah Joy Lee, ¶¶ 5-7.
[12] *Ventronics Sys., LLC v. Drager Med. GmbH*, 2011 U.S. Dist. LEXIS 154793, at *13-14 (E.D. Tex. Oct. 20, 2011) (Davis J.); *Indus. Tech. Research Inst. V. LG Corp.*, 2011 U.S. Dist. LEXIS 154778, at *29-30 (E.D. Tex. Nov. 29, 2011) (granting motion to transfer despite witnesses in Texas, based in-part, because "the witnesses [were] indistinguishable from similarly situated witnesses elsewhere").

because the movant's "California witnesses may be inconvenienced by traveling to the EDTX."[13] Because the number of Google witnesses with materially relevant knowledge in the NDCA far exceeds the number of Brite Smart witnesses in the EDTX, this factor favors transfer.

### E. Court Congestion is Neutral

Brite Smart's argument that the court congestion factor weighs against transfer because the Court already set the dates for *Markman* hearing and jury selection is unpersuasive. The Court must consider facts as they existed at the time the transfer motion is filed and not take into account the events that have transpired in the case while the motion was pending.[14] At the time Google filed this motion, the Court had not entered a docket control order yet and the scheduling conference had not even taken place yet.

### F. Localized Interest Favors Transfer

It is undisputed that Google's principal place of business is in the NDCA, and that the accused features were created and are maintained in the NDCA. Brite Smart's statement "the substantial volume of AdWords business that [Google] conducts in Texas" is inapposite, because Google's AdWords service is offered worldwide via the Internet. The Zurich and London offices of the Ad Traffic Quality Team is irrelevant to the analysis here, because 1) the London and Zurich offices do not work on online click fraud detection services accused in this case (D.I. 18, Turner Decl., at ¶ 6); and 2) in venue analysis, comparison must be made between the transferor and transferee forums and it should "not [be] altered by the presence of other witnesses and documents in places outside both forums."[15]

## II. CONCLUSION

For at least the foregoing reasons, this Court should grant Google's motion to transfer.

---

[13] *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376-JRG, at *7 (E.D. Tex. Apr. 24, 2014).
[14] *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (citation omitted).
[15] *Toyota*, 747 F.3d at 1340; s*ee In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199-1200 (Fed. Cir. 2009).

November 20, 2014

Mayer Brown LLP
A. John P. Mancini (*pro hac vice*)
Amr O. Aly (*pro hac vice*)
1675 Broadway
New York, NY 10019
(212) 506 -2500

Respectfully submitted by:

*/s/ A. John P. Mancini, with permission by*
*Michael E. Jones*
Michael E. Jones, SBN: 10929400
POTTER MINTON LLP
110 N College Avenue, Suite 500
Tyler, TX 75702
903-597-8311
mikejones@potterminton.com
*Attorneys for Defendant Google Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 20, 2014.

                      */s/ Michael E. Jones*