IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **BRITE SMART CORP.** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civ. Action No. 2:14-cv-760-JRG-RSP |
| | § | |
| **GOOGLE INC.** | § | JURY DEMANDED |
| | § | |
| *Defendant*. | § | |
| | § | |

### PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES

Plaintiff Brite Smart Corp. ("Brite Smart" or "Plaintiff") respectfully moves this Court to compel a complete response from Defendant Google Inc. ("Google" or "Defendant") to Brite Smart's interrogatories.

**I.   INTRODUCTION**

Google makes most of its money from selling pay-per-click advertising. Google provides certain methods to assure advertisers that the clicks on their advertisements reflect genuine indications of interest in the advertisers' products or services. Google performs this function, in large part, through automated click-fraud detection software. Brite Smart has accused Google's click-fraud detection software of infringing Brite Smart's click-fraud detection patents.

Brite Smart has propounded on Google Interrogatories 1-14. Despite multiple requests, Google has failed to provide a substantive response to 13 of the 14 Interrogatories. This has left Brite Smart with no choice but to seek relief from the Court.

**II.   APPLICABLE LAW**

Under Fed. R. Civ. P. 33(b)(4), a party may timely and specifically object to an interrogatory. Otherwise, the interrogatory must be answered fully. Rule 33(b)(3). Evasive of

incomplete answers may be treated as a failure to answer. Rule 37(a)(4). The requesting party can file a motion to compel if interrogatories are not answered, or if the answers are evasive or incomplete. Rule 37(a)(3)(B)(iii), (4).

Google's refusal to answer most of the Interrogatories also conflicts with this Court's local rules. Under Local Patent Rule 2-5, a party cannot object to an interrogatory because it is premature unless it falls into one of four clearly-defined categories, none of which apply to the Interrogatories below. *See Performance Pricing, Inc. v. Google Inc.*, No. 2:07-cv-432-RRR, slip op. (E.D. Tex. May 27, 2009) attached hereto as Exhibit F. Google objected to Interrogatories Nos. 1-5, 7-10, and 12-14 as premature.

## III. ARGUMENT

Google has refused, either explicitly or constructively, to provide answers to several of Brite Smart's interrogatories. In addition, Google raised unfounded objections. Google objected to Interrogatories that seek "proprietary and/or business technical, and/or commercial information until such time as a protective order agreed to by the parties is entered by the Court." Google is well aware that a Protective Order was entered by the Court on December 2, 2014. Dkt. 44. Google has also improperly asserted objections to Brite Smart's Interrogatories related to Google's alleged inability to produce certain information subject to third party confidentiality obligations. In addition, Google objected to every one of Brite Smart's Interrogatories as overly broad and unduly burdensome without providing any basis for its assertion that any Interrogatory was overly broad or unduly burdensome.

### A. Interrogatory 1

On November 26, 2014, Brite Smart propounded Interrogatory No. 1 on Google:[1]

---

[1] Exhibit A contains Brite Smart's First Set of Interrogatories Nos. 1-3.

**INTERROGATORY NO. 1:** For clicks involving the accused services, state the information Google records, maintains, and uses relating to click-fraud detection, and how that information is used, including, without limitation, dates, times, locations, and unique identifiers; and identify supporting documents, if any, used to respond to this Interrogatory.

Brite Smart had defined the term "Accused Services" as: "any and all of Google's online CPC [cost-per-click] advertising, including Google's AdWords and AdSense services, or any successor or predecessor service thereto, and specifically including any appurtenant services used to detect Click Fraud." Brite Smart defined Click-Fraud as:

> "Click-Fraud" refers to the detection of clicks that do not reflect a bona-fide indication of interest in the advertisers' products and services, and includes both intentional and accidental such clicks. "Click-Fraud" includes, without limitation, "invalid clicks" as defined at
> https://support.google.com/adwords/answer/42995?hl=en.

Google responded on December 29, 2014:[2]

**RESPONSE TO INTERROGATORY NO. 1:**[3] … Google further objects to this Interrogatory to the extent it is premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google objects to the term "click-fraud" as overly broad and unduly burdensome. Subject to its General and specific objections, and to the extent this Interrogatory can be understood, Google responds as follows: pursuant to Fed. R. Civ. P. 33(d) Google identifies its source code and source code documents produced December 15, 2014, including GOOG-BRITE-00001948.SC - GOOGBRITE- 00002629.SC and GGLB01_00000017_RESTRICTED CONFIDENTIAL - SOURCE CODE - GGLB01_00001519_RESTRICTED CONFIDENTIAL - SOURCE CODE.

First, Google's use of Rule 33(d) is improper because the burdens to the respective parties to determine the requested information are not substantially equal. In *Laserdynamics, Inc. v. Asus Computer International*, No. 2:06-cv-348-JRG, 2009 WL 153161 (E.D. Tex. Jan. 21, 2009), the court found that it was improper for Defendants to rely on Rule 33(d) when the interrogatories in question were "directed to the functionality to the defendants' own products."

---

[2] Exhibit C contains Google's Responses and Objections to Interrogatories Nos. 1-3.
[3] For brevity, Google's boilerplate objections have been omitted in each of its cited responses. Google's complete response appears in the appendix.

*Id*. at *2.[4] The court noted that it was "implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate." *Id*.

Google engineers know exactly where to look to find this information, if they don't know it off of the top of their heads. *Accord, Facedouble, Inc. v. Face.com, Inc.*, No. 12-cv-1584-DMS, 2014 WL 585868, at *2 (S.D. Cal. Feb. 13, 2014) (compelling defendant to provide a guide or road map to its source code and to identify appropriate sections of source code in response to interrogatory about functionality of the accused products). Brite Smart bears a substantially greater burden in determining how Google's software works by examining Google's source code than does Google.

Second, Google's use of Rule 33(d) is improper because Google identified the ranges of <u>entire</u> productions. Moreover, the overwhelming majority of the documents produced by Google have absolutely no relevance to Interrogatory No. 1. Brite Smart requests that Google be compelled to provide a guide or a road map to the information used by its click-fraud detection software in the form of a narrative, an index, or something akin to a detailed table of contents.

### B. Interrogatory 2

On November 26, 2014, Brite Smart propounded Interrogatory No. 2 on Google:

**INTERROGATORY NO. 2:** Please identify and describe all patent licenses that are or have been in effect at any time during the preceding ten years, for which you pay or have paid any royalty, and identify supporting documents, if any, used to respond to this Interrogatory.

Google responded on December 29, 2014:

**RESPONSE TO INTERROGATORY NO. 2:** … Google further objects to the extent this Interrogatory seeks information that is neither relevant to this litigation, nor reasonably calculated to lead to the discovery of admissible evidence, in particular to the extent the Interrogatory calls for Google to describe

---

[4] *LaserDynamics, Inc. v. Asus Computer Int'l* is attached as Exhibit J.

"all patent licenses" and not licenses that relate to the Accused Services. Google also objects to this Interrogatory to the extent it calls for information that is subject to a confidentiality obligation of any third party. Google further objects to this Interrogatory to the extent it is premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Subject to its General and specific objections, and to the extent this Interrogatory can be understood, Google responds as follows: Google has not entered any patent licenses related to the click fraud detection services provided by Google.

Brite Smart later narrowed the scope of this Interrogatory during a meet-and-confer to include only licenses relating to cost-per-click advertising. But Google arbitrarily narrowed the request to include only "patent licenses related to the click fraud detection services provided by Google" and then reported that Google had entered into no such licenses.

Brite Smart is entitled to discovery on comparable or analogous licenses. This information is relevant to the reasonably royalty for the patents-in-suit. The federal rules provide that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Relevance, at this stage in the discovery process, has been broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. For example, *Georgia-Pacific* factor 12 involves the portion of the profit that may be customary in the particular business or in comparable businesses to allow for the use of the invention *or analogous* inventions. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Google responded that "Brite Smart's request for patent licenses related to CPC advertising is simply irrelevant and not likely to lead to the discovery of admissible evidence." Google went on to maintain that its response to the Interrogatory was proper and sufficient.

5

C.     **Interrogatory 3**

On November 26, 2014, Brite Smart propounded Interrogatory No. 3 on Google:

**INTERROGATORY NO. 3:** Please identify all persons that participated in the research, conception, design, and development of your click-fraud detection capabilities, as those capabilities exist now or have ever existed, and the respective roles of those persons, and identify supporting documents, if any, used to respond to this Interrogatory.

Google responded on December 29, 2014:

**RESPONSE TO INTERROGATORY NO. 3:** … Google further objects to this Interrogatory as overly broad and unduly burdensome to the extent it calls for Google to identify "all persons," not those persons most knowledgeable about the research, conception, design, and development of Google's click fraud detection capabilities. Google also objects to this Interrogatory to the extent it calls for information that is subject to a confidentiality obligation of any third party. Google objects to the term "click-fraud detection" as vague, ambiguous, undefined, overly broad and unduly burdensome. Google further objects to this Interrogatory to the extent it is premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Subject to its General and specific objections, and to the extent this Interrogatory can be understood, Google responds as follows: Google incorporates by reference Exhibit A attached hereto.[5]

First, Google's response failed to properly identify any persons.[6] The interrogatory instructions explained that the term "identify" included setting forth the person's name, job title, and dates of employment. Google failed to include **any** of the above information – including the persons' names. Instead, Google appears in some cases to have identified persons using portions of their email addresses, and in other cases nicknames, e.g., "querymeister" and "furball". Second, Brite Smart's request requested that Google identify **all** of the persons in the described category. Google had provided a declaration that there "are more than forty Ad Traffic Quality Team engineers in Mountain View." Turner, Decl., Dkt. 18-2 ¶6. However, Google's response identified eleven persons by their photographs, without providing (1) the engineers' first and last

---

[5] The "Exhibit A" provided by Google has been filed herewith under seal as Exhibit F.
[6] In its Motion to Transfer, Google stated that its click-fraud detection was designed and created at Google's Mountain View location and that "more than forty" Ad Traffic Quality engineers work there. Dkt. 18-2 ¶¶5-6.

6

names, or (2) their dates of employment. Google wholly failed to identify (1) any of the other 29 individuals currently working in the team, or (2) any former members of the team.

While Google has stated that it would identify the persons appearing in their chart, as of today's date, Google has not supplemented their responses. More importantly, Google has not agreed to identify any of the other 29 individuals currently working in the team, or (2) any of the former employees from the team. The identities of non-managers is relevant to Brite Smart's claims because those individual engineers having responsibility for aspects of click-fraud detection relating to Brite Smart's patents will likely have the most information relating to infringement issues. Third, Brite Smart assumes that, based on third-party information, Google began its click-fraud detection activities in 2002. The priority date generally appearing on the patents-in-suit is 2003. Thus, Brite Smart has explicitly requested the click-fraud team's information as it has ever existed at Google. Google failed to provide **any** information relating past information involving the team. Fourth, Google failed to identify any supporting documents that it used to respond to Interrogatory 3.

### D.     Interrogatory 4

On December 10, 2014, Brite Smart propounded Interrogatory No. 4 on Google:[7]

**INTERROGATORY NO. 4:** For each asserted claim of the patents-in-suit that you contend is not infringed by any of the Accused Services, including directly, indirectly, literally, and by the doctrine of equivalents, set forth in detail (on an element-by-element basis) for each Accused Service the complete factual and legal basis for your contention, including by identifying all relevant facts, documents, source code (by file name and line number), and identify the person(s) who are most knowledgeable about the facts underlying your answer.

Google responded on January 12, 2015:[8]

**RESPONSE TO INTERROGATORY NO. 4:** … Google objects to the term "Accused Services" as overly broad and unduly burdensome. Google further

---

[7] Exhibit B contains Brite Smart's Second Set of Interrogatories Nos. 4-14.
[8] Exhibit D contains Google's Responses and Objections to Interrogatories Nos. 4-14

objects to this Interrogatory as seeking expert discovery and thus premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google will provide expert discovery in accordance with the Court's Docket Control Order.

Courts in this district routinely grant motions to compel responses to similar interrogatories seeking non-infringement contentions under the exact same circumstances. *See Personal Audio, LLC v. Apple, Inc.*, No: 9:09-cv-111-RC, 2010 WL 9499679 (E.D. Tex. June 1, 2010) (citing *Fellowes, Inc. v. Auroroa Corp.*, 2009 WL 1097063 (N.D. Ill. Apr. 1, 2009)); *see also Round Rock Research, LLC v. Dell, Inc.*, No. 4:11-cv-332, 2012 WL 8017390 *1-2 (E.D. Tex. Mar. 26, 2012); *see also Beneficial Innovations, Inc. v. AOL, LLC*, No. 2:07-cv-555-TJW-CE, slip op. (E.D. Tex. May 26, 2010).[9] In addition, the issue of pinpoint citations to the portions of the source code that are responsible for certain functionality have been addressed in *Laserdynamics,* No. 2:06-cv-348-JRG, slip op. at 4-5.

Google's position contradicts well-established case law in this district and the very purpose of fact discovery. Google is not entitled to provide its non-infringement contentions for the first time after the close of fact discovery in expert reports as it claims in its response.

### E. Interrogatory 5

On December 10, 2014, Brite Smart propounded Interrogatory No. 5 on Google:

**INTERROGATORY NO. 5:** Describe in detail your click-fraud detection system, including a description of the steps performed; identification of source code modules (by file name and line number) responsible for performing each step; identification of the person(s) who are most knowledgeable concerning the steps and source code modules; and identify supporting documents, if any, used to respond to this Interrogatory.

Google responded on January 12, 2015:

**RESPONSE TO INTERROGATORY NO. 5:** … Google further objects to this Interrogatory to the extent it is premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google objects to

---

[9] These cases are attached hereto as Exhibits I, H, and G, respectively.

8

the term "click-fraud" as overly broad and unduly burdensome. Google further objects to the use of the term "most knowledgeable" as vague. Subject to its General and specific objections, and to the extent this Interrogatory can be understood, Google responds as follows: pursuant to Fed. R. Civ. P. 33(d) Google identifies its source code and source code documents produced December 15, 2014 and referenced in Google's response to Interrogatory No. 1, including GOOG-BRITE-00001948.SC - GOOG-BRITE-00002629.SC and GGLB01_00000017_RESTRICTED CONFIDENTIAL - SOURCE CODE - GGLB01_00001519_RESTRICTED CONFIDENTIAL - SOURCE CODE. Google further responds that those generally knowledgeable of the identified source code and source code documents produced December 15, 2014 include David Turner and Razvan Surdulescu.

As with Interrogatory No. 1, Google's use of Rule 33(d) is improper because the burdens to the respective parties to determine the requested information are not equal. Google engineers know exactly where to look to find this information. At a minimum, Google engineers should easily be able to generate a comprehensive roadmap describing Google's click-fraud detection system. *Accord, Facedouble, supra*. Second, Google's use of Rule 33(d) is improper because Google identified the ranges of <u>entire</u> productions. Moreover, the overwhelming majority of the documents produced by Google have absolutely no relevance to Interrogatory 5. Additionally, Google has failed to identify those individuals *most* knowledgeable concerning the steps and source code modules. Google has merely identified two individuals whom it states are generally knowledgeable.

    F.    **Interrogatory 6**

On December 10, 2014, Brite Smart propounded Interrogatory No. 6 on Google:

**INTERROGATORY NO. 6:** For each of the Accused Services provisioned from the United States, please state separately, on a monthly basis or the shortest interval for which records are kept, the costs, expenses on an itemized basis, gross profit margin, operating profit margin, incremental profit margin, and revenues, and identify supporting documents, if any, used to respond to this Interrogatory, and identify the person(s) who are most knowledgeable about the facts underlying your answer.

Google responded on January 12, 2015:

9

**RESPONSE TO INTERROGATORY NO. 6:** … Google objects to the term "Accused Services" as overly broad, unduly burdensome and generic. Subject to and without waiving the foregoing General and specific objections, Google responds as follows: Google is willing to meet-and-confer regarding the scope and subject matter of this Interrogatory.

As detailed in the Certificate of Conference, Google has ignored Brite Smart's repeated requests to meet-and-confer, and has not provided any information in response to the Interrogatory.

### G. Interrogatory 7

On December 10, 2014, Brite Smart propounded Interrogatory No. 7 on Google:

**INTERROGATORY NO. 7:** Describe in detail all revisions made to your click-fraud detection system, including a description of the steps changed; the date(s) when the changes were conceived and implemented; identification of source code modules (by file name and line number) responsible for effecting the changes; identification of the person(s) who are most knowledgeable concerning the changes and effected source code modules; and identify supporting documents, if any, used to respond to this Interrogatory. The time period applicable to this Interrogatory is for all time periods during or after 2002 that you have ever used or conceived of any click-fraud detection system.

Google responded on January 12, 2015:

**RESPONSE TO INTERROGATORY NO. 7:** … Google further objects to this Interrogatory to the extent it is premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google objects to the term "click-fraud" as overly broad and unduly burdensome. Subject to its General and specific objections, and to the extent this Interrogatory can be understood, Google responds as follows: Google is willing to meet-and-confer regarding the scope and subject matter of this Interrogatory.

Brite Smart needs to ascertain: (1) whether Google was practicing the currently-accused click-fraud detection methods before the priority date of the patent; and (2) whether there had been any changed to the accused click-fraud detection methods that would have made such methods infringe during certain time periods and not infringe during other time periods. As detailed in the Certificate of Conference, Google has not responded to Brite Smart's repeated requests to meet-and-confer, nor has it provided any information in response to the Interrogatory.

10

H.     **Interrogatory 8**

On December 10, 2014, Brite Smart propounded Interrogatory No. 8 on Google:

**INTERROGATORY NO. 8:** State in detail all factual and legal bases for your equitable defenses, whether affirmative or not, and any equitable counterclaims and describe how and the extent to which you contend those defenses affect Brite Smart's ability to recover damages or other relief in this action, and identify the person(s) who are most knowledgeable about the facts underlying your answer and documents related thereto, and the names of any individuals who assisted in preparing your answer and identify all supporting documents, if any, relating to the information sought in this Interrogatory.

Google responded on January 12, 2015:

**RESPONSE TO INTERROGATORY NO. 8:** … Google further objects to this Interrogatory to the extent it is premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order.

As with Interrogatory No. 4, Google failed to provide any requested information. Google's failure to provide the factual bases for its defenses is unacceptable; as such information is exclusively within Google's control and presumably served as the bases for the defenses. For the same reason, Google's assertion that the Interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence is wholly misplaced given that Google has specifically asserted the defenses. Therefore, Google's claim that the request for such facts is premature in view of the Local Rules or the Docket Control Order is without merit.

I.     **Interrogatory 9**

On December 10, 2014, Brite Smart propounded Interrogatory No. 9 on Google:

**INTERROGATORY NO. 9:** Identify and describe in detail all material prejudice you contend you have suffered as a result of Brite Smart not filing suit before July 2014, including but not limited to, all investments or changes in your economic position caused by Brite Smart's alleged delay in filing suit, any perceived evidentiary prejudice you have suffered and caused by Brite Smart's delay in filing suit, the identification of all documents supporting your response, and the identification of the person(s) who are most knowledgeable regarding your response, along with their job titles and contact information.

Google responded on January 12, 2015:

11

**RESPONSE TO INTERROGATORY NO. 9:** … Google further objects to this Interrogatory to the extent it is premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order.

Google failed to provide <u>any</u> requested information. Google's assertion that the Interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence is wholly misplaced given that *Google has specifically asserted the defense of laches*. Dkt. 10. Thus, the facts upon which Google asserts its laches defense are clearly relevant. Per Local Patent Rule 2-5, Google's claim that the request for such facts is premature in view of the Local Rules or the Docket Control Order is without merit.

J. **Interrogatory 10**

On December 10, 2014, Brite Smart propounded Interrogatory No. 10 on Google:

**INTERROGATORY NO. 10:** For each of the Accused Services, please describe in detail your contention regarding the relevant market and competitive substitutes for the patents-in-suit, your contention regarding the date of any hypothetical negotiation for each of the patents-in-suit, your contention regarding the basis for any consumer demand for the Accused Services, your contention regarding the appropriate reasonable royalty rate and base including your contention regarding whether or not there is an established royalty, the complete factual and legal bases for all of the foregoing, the identification of all documents supporting your response, and the identification of the person(s) who are most knowledgeable regarding your response, along with their job titles and contact information.

Google responded on January 12, 2015:

**RESPONSE TO INTERROGATORY NO. 10:** … Google further objects to this Interrogatory as seeking expert discovery and thus premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google will provide expert discovery in accordance with the Court's Docket Control Order.

While Google's contentions regarding a royalty rate will involve expert opinion, experts must rely on facts to form their opinions. For example, Brite Smart will need to know all facts relating to the hypothetical negotiation date (the date that infringement began) before Brite

Smart's damages expert can author a damages report. Brite Smart therefore requests that this Court compel Google to provide the underlying facts relevant to the calculation of a royalty rate.

K. **Interrogatory 12**

On December 10, 2014, Brite Smart propounded Interrogatory No. 12 on Google:

**INTERROGATORY NO. 12:** Disclose all features that drive sales of the Accused Services and identify the apportioned revenue (by percentage) attributable to each feature for each Accused Service, the complete factual and legal basis for your contention, including by identifying all relevant facts and documents, and identify the person(s) who are most knowledgeable about the facts underlying your answer.

Google responded on January 12, 2015:

**RESPONSE TO INTERROGATORY NO. 12:** … Google objects to the term "Accused Services" as overly broad, unduly burdensome and generic. Google further objects to the term "feature" as vague and undefined. Google further objects to this Interrogatory as seeking expert discovery and thus premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google will provide expert discovery in accordance with the Court's Docket Control Order.

While Google's contentions regarding the features that drive sales for Google and the connections of such features to a royalty rate will involve expert opinion, experts must rely on facts to form their opinions. Facts are the subject of fact discovery, and parties are required to disclose such facts before the facts can be interpreted by their expert witnesses. Google's claim that the request for the underlying facts relevant to the features that drive sales of the Accused Services is premature in view of the Local Rules or the Docket Control Order is without merit.

L. **Interrogatory 13**

On December 10, 2014, Brite Smart propounded Interrogatory No. 13 on Google:

**INTERROGATORY NO. 13:** Describe in detail all facts relating to the profitability, commercial success, and popularity of the Accused Services provisioned from the United States, including without limitation:
a. total historical sales and profits broken down by the accounting period for which the records are kept (at least by quarter);
b. financial projections including sales forecasts;

13

c. market share analyses and market assessments;
d. analyst reviews;
e. business plans;
f. the identification of any facts contributing to such profitability, commercial success, and popularity;
g. the manner in which you measure or analyze whether the Accused Services are successful; and
h. information concerning customer preferences and satisfaction including customer surveys, customer reviews and market surveys.
Identify any supporting documents, if any, used to respond to this Interrogatory and identify the person(s) who are most knowledgeable about the facts underlying your answer.

Google responded on January 12, 2015:

**RESPONSE TO INTERROGATORY NO. 13:** … Google objects to the term "Accused Services" as overly broad, unduly burdensome and generic. Google further objects to the terms "profitability," "commercial success" and "popularity" as vague and undefined. Google further objects to this Interrogatory as compound and an improper attempt to circumvent the limitation on the number of interrogatories allowed to each party. Google further objects to this Interrogatory as seeking expert discovery and thus premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google will provide expert discovery in accordance with the Court's Docket Control Order.

While Google's final calculation of damages will involve expert opinion, experts must rely on facts to form their opinions. Brite Smart's interrogatory is clearly limited to the disclosure of such facts. Per Local Patent Rule 2-5, Google's claim that the request for such facts is premature in view of the Local Rules or the Docket Control Order is without merit.

M. **Interrogatory 14**

On December 10, 2014, Brite Smart propounded Interrogatory No. 14 on Google:

**INTERROGATORY NO. 14:** Please describe in detail all facts relating to the identification, availability, acceptability, and cost of any non-infringing alternatives to the apparatuses claimed in the patents-in-suit, including without limitation.
a. your use and consideration of implementing any such alternatives;
b. the specific alterations you would make to each Accused Service to effectuate such alternative(s);
c. the specific claim limitations of the patents-in-suit that would be infringed without the alternatives;

    d.    the costs associated with developing and implementing each alternative; and

    e.    the steps and time required to develop and implement each alternative.

Identify all persons with knowledge of the above information and any supporting documents, if any, used to respond to this Interrogatory.

Google responded on January 12, 2015:

**RESPONSE TO INTERROGATORY NO. 14:** … Google objects to the term "Accused Service" as overly broad, unduly burdensome and generic. Google further objects to this Interrogatory as compound and an improper attempt to circumvent the limitation on the number of interrogatories allowed to each party. Google further objects to this Interrogatory as seeking expert discovery and thus premature in view of the Local Rules of the Eastern District of Texas and the Court's Docket Control Order. Google will provide expert discovery in accordance with the Court's Docket Control Order.

Here again, Brite Smart is merely seeking the facts regarding Google's actual or potential use of non-infringing alternatives. For example, Google may have tried or may have considered methods for fighting click-fraud that are different from those described in the asserted patents. Such methods used or considered by Google are examples of facts that are clearly pertinent to this Interrogatory. Per Local Patent Rule 2-5, Google's claim that the request for such facts is premature in view of the Local Rules or the Docket Control Order is without merit.

## IV. CONCLUSION

For the foregoing reasons, Brite Smart respectfully requests that the Court grant its motion and compel Google to provide complete answers to Interrogatories 1-10 and 12-14, and for all other relief that the Court deems Brite Smart to be justly entitled.

DATED: February 9, 2015					Respectfully submitted,


							/s/ *Robert Katz*___
							Stafford Davis
							State Bar No. 24054605
							Email: sdavis@stafforddavisfirm.com
							**THE STAFFORD DAVIS FIRM, PC**
							305 South Broadway
							Suite 406
							Tyler, TX 75702
							Phone: (903) 593-7000
							Fax: (903) 703-7369

							Robert D. Katz
							Lead Attorney
							State Bar No. 24057936
							Email: rkatz@katzlawpllc.com
							**KATZ PLLC**
							6060 N. Central Expressway, Suite 560
							Dallas, TX 75206
							Phone: (214) 865-8000

							**ATTORNEYS FOR PLAINTIFF**
							**BRITE SMART CORP.**


## CERTIFICATE OF CONFERENCE

I am lead counsel for Brite Smart Corp. In compliance with Local Rule CV-7(h), I have conferred with counsel for Google in a good faith attempt to resolve the issue raised by this motion. Brite Smart wrote to Google on January 5, 2015, regarding Google's responses to Interrogatories Nos. 1-3. Ex. E at E1 – E3. The parties held a telephone conference on January 9, 2015 to discuss discovery issues with Google's RFP responses, and also discussed Google's responses to Interrogatories Nos. 1-3. No agreement was reached regarding the Interrogatories that are the subject of this Motion. Google stated that it would follow up by January 16, 2015,

but did not do so. Google wrote to Brite Smart on January 23, 2015, and stated that its responses to Interrogatories Nos. 1-2 were proper and sufficient, and that Google would identify the individuals in its organizational chart (without remedying any other issues that Brite Smart had identified in its response). Ex. E at E10-E12. Brite Smart wrote to Google on January 15, 2015 regarding Google's responses to Interrogatories Nos. 4-14. Ex. E at E4-E9. In its letter, Brite Smart had requested a meet-and-confer regarding the deficiencies within seven days. *Id*. at E9. Google failed to respond. Brite Smart again wrote to Google on January 23, 2015 and reminded Google that Brite Smart had requested a meet-and-confer regarding the Interrogatory responses. Ex. E at E13-E14. In its letter, Brite Smart advised Google that Brite Smart was forced to seek the assistance of this Court. *Id*. at E14. Pursuant to paragraph 9(b) of the Court's Discovery Order, Brite Smart requested that Google identify a date for an in-person conference. *Id*. Brite Smart requested that the conference be held between January 28 and February 5, 2015 in Tyler or Dallas. *Id*. Google failed to respond to Brite Smart's request for an in-person meet-and-confer.

/s/ *Robert Katz*\_\_\_
Robert Katz

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on date indicated above.

/s/ *Robert Katz*\_\_\_
Robert Katz