**EXHIBIT A**

**Brite Smart's Proposed Constructions and Supporting Evidence**

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| "clicks on one of the merchant websites"<br><br>['104: 1,9] | **Proposal:**<br><br>"clicks on one of the advertisements"  ["clicks" include both clicks by a person and also computer-generated spoofing activity intended to simulate a physical click by a person]<br><br>**Support:**<br><br>'104 patent, col. 2:39-42; claims 1 & 9.<br><br>*Computer-generated clicks*:  "Invalid clicks can be generated either by humans or technological means, <u>including various types of deceptive software programs, such as scripts or bots</u>."  Alexander Tuzhilin, The Lane's Gifts v. Google Report 7 (2005), *available at* http://googleblog.blogspot.com/pdf/TuzhilinReport.pdf, p. 15.<br><br>*Computer-generated clicks*:  "Examples of fraudulent activity include publishers generating unwarranted ad revenue through the use of human clickers <u>or botnets</u>."  Alrwais, Sumayah, et. al., *Dissecting Ghost Clicks: Ad Fraud Via Misdirected Human Clicks*, In ACSAC '12 Dec. 3-7, 2012, Orlando, Florida.<br><br>*Computer-generated clicks*: "A clickbot is a software robot that clicks on ads (issues HTTP requests for advertiser web pages) to help an attacker conduct click fraud."  Neil Daswani, Michael Stoppelman, and the Google Click Quality and Security Teams, Google, Inc., *The Anatomy of Clickbot.A.*<br><br>*Computer-generated clicks*:  "Advertisements on *thispagetoo.com* also receive fraudulent traffic. For instance, the publisher might ask her friends to repeatedly click on advertisements displayed on her site. Finally, in a more sophisticated hit inflation attack, publisher |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | *iwontmakemoney.com* <u>uses a botnet to automatically generate a large amount of fraudulent traffic</u>."  Fabio Soldo and Ahmed Metwally (former Google employees), Traffic Anomaly Detection Based on the IP Size Distribution"  Report re NSF CyberTrust grant 0831530.<br><br>*Devices controlled by "bots" or "spyware" unbeknownst to the owner of the device*:  [Google Unpublished Patent Application] GOOG-BRITE-00004356-4413.<br><br>Agrawal Dep. 36:20-38:17; 66:6-21; 132:22-133:3.<br><br>Matthews Dep. 54:9-56:8; 61:1-9; 87:9-88:15.<br><br>Surdulescu Dep.<br><br>GOOG-BRITE-00000376-377. |
| "client"<br><br>['667: all]<br>['763: all]<br>['057: all] | **Proposal:**<br><br>"an entity that requests information or services from a server"<br><br>**Support:**<br><br>*Client*:  "synonymous with customer or a computer system or process that requests a service of another computer system or process (e.g., a server).  *Dictionary of Computer Science, Engineering, and Technology*,  CRC Press LLC, 2001, p. 78.<br><br>*Client*:  "In general, someone or something receiving a service of some kind."  *A Dictionary of Computing* (5th ed. 2004) Oxford University Press, p. 84.<br><br>*Client-Server*:  "Clients are less powerful PCs or workstations on which users run application.  Clients rely on servers for resources, such as files, devices, and even processing power."  *Random House Personal Computer Dictionary* (2nd ed. 1996), p. 84.<br><br>Agrawal Dep. 36:20-38:17; 66:6-21; 132:22-133:3. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | Matthews Dep. 54:9-56:8; 61:1-9; 87:9-88:15.<br><br>Surdulescu Deposition |
| "client side"<br><br>['667:10, 14]<br>['763: 10] | **Proposal:**<br><br>"the side of a network that requests information or services from other computers on the network"<br><br>**Support:**<br><br>*Client-side*: "refers to operations that are performed by the client in a client-server relationship in a computer network."  Wikipedia (client-side) *available at* http://en.wikipedia.org/wiki/Client-side.<br><br>GOOG-BRITE-00001280. |
| "code identifying [a/the/said/at least one] device/ end user's computer"<br><br>['667: 10,14]<br>['763: 10]<br>['057: all] | **Proposal:**<br><br>[No construction is required]  otherwise "code intended to identify [the referenced entity]"<br><br>**Support:**<br><br>'104 patent; col. 1:52-59; 2:19-24; 2:31-34; '667 patent claims 10, 14; '763 patent claim 10; '057 patent all claims.<br><br>*Code*:  "A set of symbols for representing something.  For example, most computers use ASCII codes to represent something."  *Random House Personal Computer Dictionary* (2nd ed. 1996), p. 89.<br><br>*Code*: "A system of symbols used to convert information from one form to another." *Microsoft Computer Dictionary* (5th ed. 2002) p. 106. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | *Identify*:  "Recognize and Name: to recognize and to be able to say who or what he, she, or it is.", *Encarta World English Dictionary [North American Edition]* (2009) p. 934.<br><br>*Identifier*: "Any text string used as a label, such as the name of a procedure or a variable in a program or the name attached to a hard disk or a floppy disk. Compare *descriptor*." *Microsoft Computer Dictionary* (5th ed. 2002) p. 264. |
| "code uniquely identifying a/the device / unique code [] for identifying said client / end user's computer"<br><br>['104: all]<br>['667: 1, 11, 18]<br>['763: 1, 11, 14] | **Proposal:**<br><br>[No construction is required] otherwise "code intended to uniquely identify [the referenced entity]"<br><br>**Support:**<br><br>'104 patent; col. 1:52-59; 2:19-24; 2:31-34; '104 patent all claims; '667 patent claims 1, 11, 18; '763 patent claims 1, 11, 14.<br><br>*Code*:  "A set of symbols for representing something.  For example, most computers use ASCII codes to represent something." *Random House Personal Computer Dictionary* (2nd ed. 1996), p. 89.<br><br>*Code*: "A system of symbols used to convert information from one form to another." *Microsoft Computer Dictionary* (5th ed. 2002) p. 106.<br><br>*Identify*:  "Recognize and Name: to recognize and to be able to say who or what he, she, or it is.", *Encarta World English Dictionary [North American Edition]* (2009) p. 934.<br><br>*Identifier*: "Any text string used as a label, such as the name of a procedure or a variable in a program or the name attached to a hard disk or a floppy disk. Compare |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | *descriptor.*"  *Microsoft Computer Dictionary* (5th ed. 2002) p. 264. |
| "concatenating the another code to the code previously generated / the another code is concatenated to the code previously generated"<br><br>['104: all] | **Proposal:**<br><br>[No construction is required] otherwise, "linking together the another code and the code previously generated" [there may be other information also linked before, after, or between the codes]<br><br>**Support:**<br><br>'104 patent; col. 2:31-34; '104 patent all claims.<br><br>*Concatenate*: "2.  COMPUT  <u>link units together</u>", *Encarta World English Dictionary [North American Edition]* (2009) (emphasis added).<br><br>*Concatenate*:  "literally, 'linked together'.  To join two sequences to produce a single sequence." *Dictionary of Computer Science, Engineering, and Technology*, CRC Press LLC, 2001, pp. 95-96.<br><br>*Concatenate*:  "To link together or join.  For example, concatenating the three words in, as, and much yields the single word inasmuch.  Computer manuals often refer to the process of concatenating strings, a string being any series of characters.  You can also concatenate files by appending one to another. *Random House Personal Computer Dictionary* (2nd ed. 1996), p. 107.<br><br>*Concatenation*:  "The act of linking together two or more objects." *Random House Personal Computer Dictionary* (2nd ed. 1996), p. 107.<br><br>*Concatenation*:  "The operation of joining two strings to form a longer string." *A Dictionary of Computing* (5th ed. 2004) Oxford University Press, p. 106.<br><br>GOOG-BRITE-00002260;  GOOG-BRITE-02000200.SC |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| "concatenating said code with at least one of said links to said websites"<br><br>['763: 5] | **Proposal:**<br><br>[No construction is required] otherwise, "linking together the code with at least one of the links to the websites" [there may be other information also linked between the code and the links]<br><br>**Support:**<br><br>'104 patent; col. 2:31-34; '768 patent claim 5.<br><br>*Concatenate*: "2.  COMPUT  <u>link units together</u>", *Encarta World English Dictionary [North American Edition]* (2009) (emphasis added).<br><br>*Concatenate*:  "literally, 'linked together'.  To join two sequences to produce a single sequence." *Dictionary of Computer Science, Engineering, and Technology*, CRC Press LLC, 2001, pp. 95-96.<br><br>*Concatenate*:  "To link together or join.  For example, concatenating the three words in, as, and much yields the single word inasmuch.  Computer manuals often refer to the process of concatenating strings, a string being any series of characters.  You can also concatenate files by appending one to another. *Random House Personal Computer Dictionary* (2nd ed. 1996), p. 107.<br><br>*Concatenation*:  "The act of linking together two or more objects." *Random House Personal Computer Dictionary* (2nd ed. 1996), p. 107.<br><br>*Concatenation*:  "The operation of joining two strings to form a longer string." *A Dictionary of Computing* (5th ed. 2004) Oxford University Press, p. 106.<br><br>*Link*: "In hypertext, the logical connection between discrete units of data."  Federal Standard 1037C, published Aug. 7, 1996. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | GOOG-BRITE-00002260;  GOOG-BRITE-02000200.SC |
| "cookie"<br><br>['104: 5, 13]<br>['667: 3, 21]<br>['763: 3, 17]<br>['057: 9] | **Proposal:**<br><br>"a small file stored on a computer containing a code used to identify a user, a browser, or a computer"; alternatively<br>"a data structure that is written to a browser computer upon an initial visit to an Internet website in response to server-side processing and automatically provided by the browser along with a request for a page unless the browser prevents cookies or the cookie has been deleted."<br><br>**Support:**<br>'104 patent; col. 2:19-37; 2:31-34; '104 patent claims 5, 13; '667 patent claims 3, 21; '763 patent claims 3, 17; '057 patent claim 9.<br><br>*Cookie*:  "A cookie is a small file containing a string of characters that is sent to your computer when you visit a website. When you visit the website again, the cookie allows that site to recognize your browser."  Google Key Terms available at http://www.google.com/intl/en/policies/privacy/key-terms/<br><br>*Use of Cookies*:  "the [National Security Agency] and its British counterpart, GCHQ, are using the small tracking files or 'cookies' that advertising networks place on computers to identify people browsing the Internet.  The intelligence agencies have found particular use a part of a Google-specific tracking mechanism known as the 'PREF' cookie."  Ashkan Soltani, et. al, *NSA uses Google cookies to pinpoint targets for hacking*, The Washington Post, Dec. 10, 2013, *available at* http://www.washingtonpost.com/blogs/the-switch/wp/2013/12/10/nsa-uses-google-cookies-to-pinpoint-targets-for-hacking/<br><br>Agrawal Dep. 70:24-71:9.<br><br>Surdulescu Dep. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | GOOG-BRITE-00001280. |
| "determining from said data whether said at least one of said selections of said at least one web page is fraudulent"<br><br>['667: 10, 14]<br>['763: 10] | **Proposal:**<br><br>[No construction is required] (note that the term "fraudulent" is elsewhere proposed for a construction)<br><br>**Support:**<br><br>'104 patent Abstract; col. 1:52-61; '667 patent claims 10, 14; '763 patent claim 10.<br><br>*Google has admitted that its own systems combat click fraud*: "But Google contends that class members could never prove such a claim, because Google aggressively roots out click fraud, using highly sophisticated techniques and processes, and minimizes any impact it has on advertisers. Indeed, Dr. Alex Tuzhilin, the independent expert who reviewed Google's systems and processes for combating click fraud as part of the settlement, criticized the published reports of supposed click-fraud statistics on which the objectors rely, noting in his report that most of them have questionable methodologies and assumptions, and "would not stand hard scientific scrutiny." *Lane's Gifts and Collectibles, et al. v. Yahoo! Inc., et al.*, No. CV-2005-52-1, Circuit Court of Miller County, Arkansas, Defendant Google Inc.'s Omnibus Response to Objections, July 21, 2006, at 8 (emphasis added).<br><br>Brite Smart incorporates by reference Google's alleged prior art references (GOOG-BRITE-PA-00000001-556) that involve the automated detection of click fraud specifically including: Yomtobian, Doliov, Ferber, Aaron, Li, Sheynblat, O'Sullivan, Ryan, Brindley, Wee, Klots, Gupta, Bradley, Meggs, Messer, Yehoshua, Ishikawa, and Cheung.<br><br>"The systems and methods for monitoring Internet site access described herein may be used to verify and/or qualify user Internet website access to alleviate click fraud… ." U.S. Patent No. 7,610,276 at 2:24-27 (emphasis added). |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | "<u>A system is disclosed for</u> measuring click traffic quality by scoring clicks made on sponsored advertisements. A click score generated by the disclosed system may enable advertisers and publishers to <u>distinguish between legitimate and fraudulent clicks</u>." U.S. Patent Application No. 2008/0270154 Abstract (emphasis added).<br><br>"A system is disclosed for detecting and handling click fraud in a mobile environment." U.S. Patent No. 8,799,069 Abstract. "To address the potential for click fraud, click-based advertisement models may employ click fraud detection systems to identify "valid" or legitimate clicks." *Id*. at 1:33-35.<br><br>"A method for determining whether clicks on results in a search are fraudulent is provided." U.S. Patent Application No. 2008/0162475 Abstract.<br><br>"Methods of detecting potential click fraud are provided in which information relating to a click on an Internet advertisement is received.  A measured location of a source of the click is also received. The source of the click may be identified as <u>potentially fraudulent</u> based at least in part on the received information and the measured location of the source. Methods of identifying potentially fraudulent activations of Internet advertisements and related systems and computer program products are also provided." U.S. Patent No. 8,676,637 Abstract (emphasis added).<br><br>"A number of search engines have tried to reduce the amount of fraudulent clicks by employing various technologies or fraud filters. For example, <u>at least one search engine has created algorithms that sift through the clicks to find patterns suggesting fraud</u>." U.S. Patent No. 8,042,164 at 2:10-14 (emphasis added).<br><br>"A method, system and computer-readable medium for reducing a financial impact of click fraud are presented. In a preferred embodiment, the method includes, but is not limited to, the steps of: <u>testing a sample of click events for fraudulent clicks</u> of the PPC link, wherein the testing of the sample of click events for fraudulent clicks is directed to detecting fraudulent non-human clicks of the PPC link… ." U. S. Patent No. 8,131,611 Abstract. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | "An advantage of the present invention includes providing additional information … . Such data would then be used to identify whether clicks on a web site are fraudulent due to activity from, for example, a click harvesting mechanism." U. S. Patent No. 8,719,396 at 2:21-32.

"Pay per click advertising is an arrangement where a web publisher displays a clickable advertisement in exchange for a charge per click paid by the advertiser. An advertising network acts as a middleman between the advertiser and the publisher. … One commonly experienced problem with pay per click advertising relates to click fraud. Click fraud is the practice of artificially inflating traffic statistics to defraud the advertiser or the publisher. By using an automated clicking program or employing low-cost workers to click the link to a target advertisement, perpetrators of the <u>click fraud scheme create an illusion that a large number of potential customers are clicking a link to the target advertisement when, in fact, there is no likelihood that any of the clicks will lead to profit for the advertiser.</u> A sizable portion of advertising budget is lost due to click fraud." U. S. Patent No. 8,639,570 at 1:6-22 (emphasis added). |
| "determining whether the requested link to the merchant website is legitimate or fraudulent by examining a duration between two visits to the one of the merchant websites in the code"

['104: 1] | **Proposal:**

"determining whether the click on the advertisement is legitimate by examining a duration between two visits to the one of the merchant websites that is identified by the code"

**Support:**

'104 patent Abstract; col. 1:52-61; claim 1.

See above claim phrase identifying multiple automated systems for click fraud detection. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | *Link*: "In hypertext, the logical connection between discrete units of data."  Federal Standard 1037C, published Aug. 7, 1996. |
| "examining a duration between/of two visits [] in the code" ['104: all]<br><br>"measuring the duration between clicks [] by examining said code" ['667: 1, 18; '763: 1, 14]<br><br>"examining a duration between a time of one of said selections/clicks [] and a time of another of said selections/clicks" ['667: 10, 14; '763: 10, '463: 10]<br><br>"examining a difference between said first time and said second time" ['057: all] | **Proposal:**<br><br>[No construction is required]  (note that "determining whether the requested link to the merchant website is legitimate or fraudulent by examining a duration between two visits to the one of the merchant websites in the code" is proposed for construction)<br><br>**Support:**<br><br>'104 patent Abstract; col. 1:52-61; 2:39-50; '104 patent all claims; '667 patent claims 1, 10, 14, 18; '763 patent claims 1, 10, 14; '057 patent all claims. |
| "fraud / fraudulent / fraudulent activity"<br><br>['104: all]<br>['667: all]<br>['763: all] | **Proposal:**<br><br>Fraud and Fraudulent:  "not reflecting a bona-fide indication of interest"; alternatively "illegitimate"<br><br>Fraudulent activity:  "activity that does not reflect a bona-fide indication of interest"; alternatively "activity that does not reflect legitimate interest"<br><br>**Support:**<br><br>'104 patent Abstract; col. 1:9-12; 1:39-48; 1:52-61; 2:38-50; all claims.<br><br>*Click-fraud*:  "For purposes of the rebates, the agreement defines click fraud as "clicks generated by persons that did not have a bona fide interest in viewing the content of a Yahoo ad," Kaplan said."  Wendy Davis, *Yahoo Promises Refunds in Click Fraud* |

| Claim Term | Plaintiff's Proposed Construction and Support |
|------------|-----------------------------------------------|
| | *Settlement*, Online Media Daily, *available at* http://www.mediapost.com/publications/article/45136/yahoo-promises-refunds-in-click-fraud-settlement.html, June 30, 2006, (emphasis added).<br><br>*Click-fraud*: "Consider a search engine that places ads onto a syndicator's web site. The syndicator can increase its revenue by clicking the ads on its own site – click fraud, in that the associated clicks come from the syndicator <u>rather than from bona fide users</u>." Benjamin Edelman, *Deterring Online Advertising Fraud Through Optimal Payment in Arrears*, Working Paper 08-072, Harvard Business School, 2008 available at http://ssrn.com/abstract=1095262, p. 2 (emphasis added)<br><br>*Click-fraud*: "In recent years, Google has faced criticism and several lawsuits related to its response to click fraud, which is basically a click on an ad that is <u>not the result of any genuine interest in what that ad is offering</u>." Julia Layton, What is this click fraud that is costing Google billions? *available at* http://computer.howstuffworks.com/click-fraud.htm (emphasis added).<br><br>*Click-fraud*: "… this could lead to 'click fraud' wherein both the user and the host are motivated to defeat the advertiser's goals. For example a user is induced to merely click on ads, either for the user's own gain or for the gain of the host (e.g. when the host provides a 'kickback' to the user), <u>rather than for a bona fide interest in the advertiser</u> or for a genuine desire to even consider the advertisement." U.S. Patent Application Pub. No. 2007/0179849 (priority date Feb. 2, 2006) [0009] (emphasis added).<br><br>*Click-fraud*: "Click fraud takes place when clicks to online advertisements are generated with the goal of triggering payment for the click, rather than having any interest in the advertised site." Qing Zhang, et. al, *Got Traffic, An Evaluation of Click Traffic Providers*, WebQuality '11, March 28, 2011 Hyderabad, India, p. 2.<br><br>*Click-fraud*: "fraudulent clicks or 'click spam' can be defined as any kind of click received from a cost per click (cpc) search engine – or from any other online traffic |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | source that is using the cpc pricing model – that occurs <u>with zero possibility for a conversion to occur, or for a web site visit from a legitimate user to occur</u>." Jessie Stricchhiola, *Click Fraud in PPC & Google*, available at https://www.alchemistmedia.com/click-fraud.html emphasis added).<br><br>*Click-fraud*: "The usage of the word 'fraud' in this in [the context of click fraud] has caused a great deal of confusion, as it's practically impossible to 'prove' that an impression or click was caused by deliberate deception." *Google Inside AdWords – Google's official blog for news, tips and information on AdWords*, available at http://adwords.blogspot.com/2006/03/about-invalid-clicks.html.<br><br>*Click-fraud*: "In the context of CPC ads, click fraud is the practice of fraudulently generating clicks on CPC ads <u>without any intention of fruitfully interacting with the advertiser's site</u>." Paul Pearce, et al, *The ZeroAccess Auto-Clicking and Search-Hijacking Click Fraud Modules (Technical Report)*, Electrical Engineering and Computer Sciences, University of California at Berkeley, Dec. 16, 2013, p. 4 (emphasis added).<br><br>*Fraud*: "In the context of online advertising and a pay-per-click advertising model, opportunities may exist for people to commit fraud, which can be viewed as <u>anomalous activity relative to valid selections of online advertisements</u>." U.S. Patent No. 7,523,016 (filed Dec. 29, 2006) col. 1:9-14 (assigned to Google Inc.) (emphasis added). |
| "information about one or more selections/clicks by the [end] user"<br><br>['667: 10, 14]<br>['763: 10] | **Proposal:**<br><br>[No construction is required] (note that "clicks" and "user" are proposed for construction elsewhere; according to Google, the alleged indefiniteness is related to "website information")<br><br>**Support:** |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | '104 patent col. 2:39-50; '667 patent claims 10, 14; '763 patent claim 10. |
| "invalid click" <br><br> ['057: all] | **Proposal:** <br><br> "clicks that do not reflect a bona-fide indication of interest" – includes computer-generated spoofing activity intended to simulate a physical click by a person <br><br> **Support:** <br><br> '104 patent Abstract; col. 1:9-12; 1:39-48; 1:52-61; 2:38-50; '057 patent all claims. <br><br> *Invalid clicks*:  "Invalid Clicks arising from suspected 'click fraud' are a sub-component of Invalid Clicks and originate from a user, program or automated agent (e.g., Internet robot or spider) that accesses a URL for the purpose of manipulating click measurement activity or click-based advertising payments, <u>having no intention of legitimately browsing site content, making a purchase or performing any other type of legitimate conversion action</u>."  Interactive Advertising Bureau Click Measurement Guidelines, Version 1.0 – Final Release, May 12, 2009, p. 8 (emphasis added). <br><br> *Computer-generated clicks*:  "Invalid clicks can be generated either by humans or technological means, <u>including various types of deceptive software programs, such as scripts or bots</u>."  Alexander Tuzhilin, *The Lane's Gifts v. Google Report* (2005), *available at* http://googleblog.blogspot.com/pdf/TuzhilinReport.pdf, p. 15. <br><br> *Computer-generated clicks*:  "Examples of fraudulent activity include publishers generating unwarranted ad revenue through the use of human clickers <u>or botnets</u>."  Alrwais, Sumayah, et. al., *Dissecting Ghost Clicks: Ad Fraud Via Misdirected Human Clicks*, In ACSAC '12 Dec. 3-7, 2012, Orlando, Florida. <br><br> *Computer-generated clicks*: "A clickbot is a software robot that clicks on ads (issues HTTP requests for advertiser web pages) to help an attacker conduct click fraud."  Neil Daswani, Michael Stoppelman, and the Google Click Quality and Security Teams, Google, Inc., *The Anatomy of Clickbot.A.* |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | *Computer-generated clicks*: "Advertisements on *thispagetoo.com* also receive fraudulent traffic. For instance, the publisher might ask her friends to repeatedly click on advertisements displayed on her site. Finally, in a more sophisticated hit inflation attack, publisher *iwontmakemoney.com* uses a botnet to automatically generate a large amount of fraudulent traffic." Fabio Soldo and Ahmed Metwally (former Google employees), *Traffic Anomaly Detection Based on the IP Size Distribution*" Report re NSF CyberTrust grant 0831530.<br><br>*Devices controlled by "bots" or "spyware" unbeknownst to the owner of the device*: [Google Unpublished Patent Application] GOOG-BRITE-00004356-4413.<br><br>GOOG-BRITE-00000376-377. |
| "links associated with [] web pages"<br><br>['667: 10, 14]<br>['763: 10]<br>['057: all] | **Proposal:**<br><br>[No construction is required]<br><br>**Support:**<br><br>'104 patent col. 1:33-48; '667 patent claims 10, 14; '763 patent claim 10; '057 patent all claims.<br><br>*Search engine links don't necessarily lead directly to advertisers' web pages*: "If the user chooses to click on the ad (Step 6), the browser makes an HTTP request for fetching the ad URL from the ad server. At this point, the ad server logs an ad click (Step 7) and, if using the predominant CPC pricing, charges the advertiser associated with that ad. After logging the click, the server redirects the user's browser to the advertiser's site, typically using an HTTP redirect response code (Steps 9–11), though other mechanisms are possible." Paul Pearce, et al, *The ZeroAccess Auto-Clicking and Search-Hijacking Click Fraud Modules (Technical Report)*, Electrical Engineering and Computer Sciences, University of California at Berkeley, Dec. 16, 2013, pp. 3-4 and Fig. 1 (emphasis added).<br><br>*Communication between users and search engines is often indirect*: "To make such a manual clicking attack harder to trace and detect, some fraudsters use HTTP proxies to |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | obscure the source of their clicks. HTTP <u>proxies can anonymize traffic by acting as an intermediary between a user's machine and web site</u>. Proxies can hide the source IP address, and strip identifying information, such as cookies, from HTTP requests. HTTP proxy services are often available for free or at nominal fees. Some attackers also set up a means to systematically re-route traffic through a series of proxy machines to further obscure the original source of HTTP requests."  The Google Ad Traffic Quality Team et al, *Online Advertising Fraud*, for the book "Crimeware" 2008, p. 13 (emphasis added).<br><br>*Link*: "In hypertext, the logical connection between discrete units of data."  Federal Standard 1037C, published Aug. 7, 1996. |
| "links associated with [] websites"<br><br>['667: 1, 18]<br>['763: 1, 14] | **Proposal:**<br><br>[No construction is required]<br><br>**Support:**<br><br>'104 patent col. 1:33-48; '667 patent claims 1, 18; '763 patent claims 1, 14.<br><br>*Search engine links don't necessarily lead directly to advertisers' web pages*: "If the user chooses to click on the ad (Step 6), the browser makes an HTTP request for fetching the ad URL from the ad server. At this point, the ad server logs an ad click (Step 7) and, if using the predominant CPC pricing, charges the advertiser associated with that ad. <u>After logging the click, the server redirects the user's browser to the advertiser's site</u>, typically using an HTTP redirect response code (Steps 9–11), <u>though other mechanisms are possible.</u>"  Paul Pearce, et al, *The ZeroAccess Auto-Clicking and Search-Hijacking Click Fraud Modules (Technical Report)*, Electrical Engineering and Computer Sciences, University of California at Berkeley, Dec. 16, 2013, pp. 3-4 and Fig. 1 (emphasis added).<br><br>*Communication between users and search engines is often indirect*: "To make such a |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | manual clicking attack harder to trace and detect, some fraudsters use HTTP proxies to obscure the source of their clicks. HTTP <u>proxies can anonymize traffic by acting as an intermediary between a user's machine and web site</u>. Proxies can hide the source IP address, and strip identifying information, such as cookies, from HTTP requests. HTTP proxy services are often available for free or at nominal fees. Some attackers also set up a means to systematically re-route traffic through a series of proxy machines to further obscure the original source of HTTP requests."  The Google Ad Traffic Quality Team et al, *Online Advertising Fraud*, for the book "Crimeware" 2008, p. 13 (emphasis added).<br><br>*Link*: "In hypertext, the logical connection between discrete units of data."  Federal Standard 1037C, published Aug. 7, 1996. |
| "pay-per-click engine"<br><br>['763: 10-14] | **Proposal:**<br><br>"pay-per-click program within a pay-per-click system"  ("pay-per-click system" is construed separately)<br><br>**Support:**<br><br>'104 patent Fig 1, col. 1:24-28, 1:52-54, 2:14-34; '763 patent claims 10-14.<br><br>See the references for "pay-per-click" system. |
| "pay-per-click system"<br><br>['104: all]<br>['667: 1, 18]<br>['763: all] | **Proposal:**<br><br>"a system that charges advertisers for each click on their ads" – also known as cost-per-click<br><br>**Support:**<br><br>'104 patent col. 1:33-48, 1:52-61, 2:14-19; '104 patent all claims; '667 patent claims 1, 18; '763 patent all claims. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
|  | *Pay-per-click (aka cost-per-click)*:  Cost-per-click (CPC) bidding means that you pay for each click on your ads. … CPC pricing is sometimes known as pay-per-click (PPC).  Google AdWords Help (Cost-per-click) *available at* https://support.google.com/adwords/answer/116495?hl=en.<br><br>*Pay per click*:  Pay per click (PPC), also called cost per click, is an internet advertising model used to direct traffic to websites, in which advertisers pay the publisher (typically a website owner) when the ad is click. … With search engines, advertisers typically bid on keyword phrases relevant to their target market.  Wikipedia (Pay Per Click) available at http://en.wikipedia.org/wiki/Pay_per_click.<br><br>Brite Smart incorporates by reference the alleged prior art references produced by Google that describe various pay-per-click systems.<br><br>*Pay per click*:  "Pay Per Click (PPC) is a fundamental market of the Internet.  In a PPC model, an Advertiser creates a clickable advertisement link from a popular public website that is maintained by a Publisher. Whenever a visitor to that website clicks the advertisement link, the Advertiser pays the Publisher of the popular public website a fee. That is, the Advertiser pays the Publisher for each 'click through' that a visitor to the Publisher's website generates, thus paying the Publisher for each 'referral' to the Advertiser's website."  U. S. Patent No. 8,131,611 at 1:12-21. |
| "predetermined number of requests"<br><br>['104: 7, 15] | **Proposal:**<br><br>[No construction is required]<br><br>**Support:**<br><br>'104 patent Abstract, 1:52-61, claims 7, 15<br><br>*Predetermine*:  "Arrange in Advance: to decide, agree, or arrange in advance", |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | *Encarta World English Dictionary [North American Edition]* (2009) p. 1482.<br><br>Surdulescu Dep. |
| "predetermined number of requests from the user during a given period of time"<br><br>['104: 7, 15] | **Proposal:**<br><br>[No construction is required]<br><br>**Support:**<br><br>'104 patent Abstract, 1:52-61, claims 7, 15<br><br>*Predetermine*:  "Arrange in Advance: to decide, agree, or arrange in advance", *Encarta World English Dictionary [North American Edition]* (2009) p. 1482.<br><br>Surdulescu Dep. |
| "receiving [] a [search] request from a client / receiving a request from an end user's computer"<br><br>['667: 1, 18]<br>['763: 1, 14] | **Proposal:**<br><br>[No construction is required] (note that many component terms have been proposed for construction separately)<br><br>**Support:**<br><br>'104 patent Fig. 1, col 2:4-18, 2:31-37; '667 patent claims 1, 18; '763 patent claims 1, 14. |
| "requested link"<br><br>['104: all] | **Proposal:**<br><br>"the click on the advertisement"<br><br>**Support:** |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | '104 patent title, col. 1:33-48, all claims<br><br>*Link*: "In hypertext, the logical connection between discrete units of data."  Federal Standard 1037C, published Aug. 7, 1996. |
| "search engine"<br><br>['104: all]<br>['667: all] | **Proposal:**<br><br>"a computer system that searches documents for specified keywords and returns a list of matching documents"<br><br>**Support:**<br><br> '104 patent Fig. 1, col. 1:24-38, col 2:14-26; '104 patent all claims; '667 patent all claims<br><br>*Search engine*:  "A resource on the Web, accessible via a browser, which helps a user to find sites and information."  David Crystal, *A Glossary of Netspeak and Textspeak*, Edinburgh University Press, 2004, p. 95.<br><br>*Search engine*:  "A program that when initiated by a search command from a user interface examines a body of data for items satisfying the search criteria and returns the items of their locations to the interface.  The data could be, say a literary database or information about very large numbers of World Wide Web sites.  Google, Alta Vista, and Yahoo are examples of Web search engines."  *A Dictionary of Computing* (5th ed. 2004) Oxford University Press, p. 467.<br><br>*Search engine*: "2.  On the Internet, a program that searches for keywords in files and documents found on the World Wide Web, newsgroups, Gopher menus, and FTP archives.  Some search engines are used for a single Internet site, such as a dedicated search engine for a Web site.  Others search across many sites, using such agents as spiders to gather lists of available files and documents and store these lists in |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| | databases that uses can search by keyword.  Examples of the latter type of search engine are Lycos and Excite.  Most search engines reside on a server." *Microsoft Computer Dictionary* (5th ed. 2002) p. 469.<br><br>*Search engine*:  "Search engines are programs that search documents for specified keywords and return a list of the documents where the keywords were found.  A search engine is really a general class of programs, however, the term is often used to specifically describe systems like Google, Bing and Yahoo! Search that enable users to search for documents on the World Wide Web."  Webopedia, *available at* http://www.webopedia.com/TERM/S/search_engine.html. |
| "in an order according to incremental compensation for click-through to the websites"<br><br>['104: preamble] | **Proposal:**<br><br>Preamble is not limiting; otherwise, "advertisements are displayed in an order that considers the amount of compensation for click-through to the websites"<br><br>**Support:**<br><br>'104 patent Fig. 1, col 1:24-25, col 2:14-26, all claims |
| "search request"<br><br>['667: 1, 18] | **Proposal:**<br><br>[No construction is required]<br><br>**Support:**<br><br>'104 patent Fig. 1, col. 1:24-28, col 2:14-18; '667 patent claims 1, 18 |
| "user"<br><br>['104: all]<br>['667: 10-14] | **Proposal:**<br><br>"an entity that submits a request" |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| ['763: 10-12]<br>['057: 1] | **<u>Support:</u>**<br><br>'104 patent all claims; '667 patent claims 10-14; '763 patent claims 10-12; '057 patent claim 1.<br><br>*Computer-generated clicks*:  "Invalid clicks can be generated either by humans or technological means, <u>including various types of deceptive software programs, such as scripts or bots</u>."  Alexander Tuzhilin, The Lane's Gifts v. Google Report 7 (2005), *available at* http://googleblog.blogspot.com/pdf/TuzhilinReport.pdf, p. 15.<br><br>*Computer-generated clicks*:  "Examples of fraudulent activity include publishers generating unwarranted ad revenue through the use of human clickers <u>or botnets</u>."  Alrwais, Sumayah, et. al., *Dissecting Ghost Clicks: Ad Fraud Via Misdirected Human Clicks*, In ACSAC '12 Dec. 3-7, 2012, Orlando, Florida.<br><br>*Computer-generated clicks*: "A clickbot is a software robot that clicks on ads (issues HTTP requests for advertiser web pages) to help an attacker conduct click fraud."  Neil Daswani, Michael Stoppelman, and the Google Click Quality and Security Teams, Google, Inc., *The Anatomy of Clickbot.A*.<br><br>*Computer-generated clicks*:  "Advertisements on *thispagetoo.com* also receive fraudulent traffic. For instance, the publisher might ask her friends to repeatedly click on advertisements displayed on her site. Finally, in a more sophisticated hit inflation attack, publisher *iwontmakemoney.com* <u>uses a botnet to automatically generate a large amount of fraudulent traffic</u>."  Fabio Soldo and Ahmed Metwally (former Google employees), Traffic Anomaly Detection Based on the IP Size Distribution"  Report re NSF CyberTrust grant 0831530.<br><br>Agrawal Dep. 36:20-38:17; 66:6-21; 132:22-133:3.<br><br>Matthews Dep. 54:9-56:8; 61:1-9; 87:9-88:15.<br><br>Surdulescu Dep.<br><br>GOOG-BRITE-00000376-377. |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| "server side / server side computing device"<br><br>['667: all]<br>['763: all]<br>['057: all] | **Proposal:**<br><br>[No construction is required]; otherwise, "the side of a network that provides information or services to other computers on the network"<br><br>**Support:**<br><br>'104 patent Fig. 1, col. 1:24-38, col 2:14-26; '667 patent all claims; '763 patent all claims; '057 patent all claims<br><br>*Server side*: "Server-side refers to operations that are performed by the server in a client-server relationship in computer networking.  Wikipedia (Server-side) *available at* http://en.wikipedia.org/wiki/Server-side.<br><br>GOOG-BRITE-00001280; GOOG-BRITE-00002326. |
| "web pages"<br><br>['667: 10, 14]<br>['763: 1, 14]<br>['057: all] | **Proposal:**<br><br>[No construction is required]; otherwise, "documents on the world wide web"<br><br>**Support:**<br><br>*Web page*:  "A hypertext document on the World Wide Web."  *A Dictionary of Computing* (5th ed. 2004) Oxford University Press, p. 572.<br><br>*Web page*:  "A document on the World Wide Web."  *Random House Personal Computer Dictionary* (2nd ed. 1996).<br><br>*Web page*: "A document on the World Wide Web."  *Microsoft Computer Dictionary* (5th ed. 2002) p. 564. |
| "websites" | **Proposal:** |

| Claim Term | Plaintiff's Proposed Construction and Support |
|---|---|
| ['104: all]<br>['667: 1, 18]<br>['763: 1, 14] | [No construction is required]; otherwise, "locations on the World Wide Web, each of which usually host a collection of web pages."<br><br>**Support:**<br><br>'104 patent Fig. 1, col. 1:28-33, col. 2:39-50, all claims; '667 patent claims 1, 18; '763 patent claims 1, 14.<br><br>*Web site*: "A collection of Web pages owned by an individual, organization, or company." *A Dictionary of Computing* (5th ed. 2004) Oxford University Press, p. 572.<br><br>*Web site*: "A site (location) on the World Wide Web." *Random House Personal Computer Dictionary* (2nd ed. 1996).<br><br>*Web site*: "A group of related HTML documents and associated files, scripts, and databases that is served up by an HTTP server on the World Wide Web." *Microsoft Computer Dictionary* (5th ed. 2002) p. 564. |
| "website information regarding a website selected/clicked by the client"<br><br>['667: 1, 18]<br>['763: 1, 14] | **Proposal:**<br><br>[No construction is required] (note that many component terms have been proposed for construction separately)<br><br>**Support:**<br><br>'104 patent title, Fig. 1, col. 1:28-48, col. 2:39-50, all claims; '667 patent claims 1, 18; '763 patent claims 1, 14. |

**Antecedent Basis Terms**

| Claim Term | Reference |
|---|---|
| "website information" as used in last limitation of '667: 1, 18; '763: 1, 14 | [No construction is required]; otherwise "the website information" used in the last limitation of the '667 patent claims 1 and 18 refers to "website information" in limitation (f); and "said website information" used in the last limitation of the '763 patent claims 1 and 14 refers to "website information" in limitation (f). |
| one of said clicks | [No construction is required]; otherwise, refers to one of "one or more clicks" |
| one of said links | [No construction is required]; otherwise, "one of said links" used in the '667 and '057 patents refers to one of "a plurality of links"; and "one of said links" used in the '763 patent refers to one of "one or more links" |
| said at least one device | [No construction is required]; otherwise, refers to "at least one device on a client side" |
| said at least one of said selections of said at least one web page | [No construction is required]; otherwise, "said at least one of said selections of said at least one web page" refers to "one or more selections by the user of at least one of said plurality of web pages" except in claim 10 of the '763 patent where it refers to "one or more selections by the user of at least one of said one or more of web pages" |
| said client | [No construction is required]; otherwise, refers to "a client" |
| said client side | [No construction is required]; otherwise, refers to "a client side" |
| said code | [No construction is required]; otherwise "said code" used in claims 1, 2, 3, 6, 18, 19, 21, 23 of the '667 patent and claims 1, 2, 3, 5, 6, 14, 15, 17, 19 of the '763 patent refers to "a unique code"; and "said code" used in claims 10, 11, 14, 15 of the '667 patent, claims 10, 11 of the '763 patent refers to "a code" |
| said data | [No construction is required]; otherwise, refers to "data" |
| said device | [No construction is required]; otherwise, refers to "a device" |
| said first code | [No construction is required]; otherwise, refers to "a first code" |
| said plurality of web pages | [No construction is required]; otherwise, refers to "a plurality of web pages" |
| said request | [No construction is required]; otherwise, refers to "a request" |
| said search request | [No construction is required]; otherwise, refers to "a search request" |
| said second click | [No construction is required]; otherwise, refers to "a second click" |
| said second code | [No construction is required]; otherwise, refers to "a second code" |
| said selected website | [No construction is required]; otherwise "said selected website" refers to "a website |

| Claim Term | Reference |
|---|---|
|  | selected by the client" |
| said selections of said at least one web site | [No construction is required]; otherwise "said selections of said at least one web site" refers to "one or more selections by the user of at least one of said plurality of web pages" except for claim 10 of the '763 patent where it refers to "one or more selections by the user of at least one of said one or more of web pages" |
| said server side | [No construction is required]; otherwise, refers to "a server side" |
| said third code | [No construction is required]; otherwise, refers to "a third code" |
| said website information | [No construction is required]; otherwise, "said website information" refers to "website information regarding a website selected / clicked by the client" |
| the another code | [No construction is required]; otherwise, refers to "another code" |
| the at least web page | [No construction is required]; otherwise, refers to "at least one web page" |
| the client | [No construction is required]; otherwise, refers to "a client" |
| the code | [No construction is required]; otherwise, refers to "a code" |
| the device | [No construction is required]; otherwise, refers to "a device" |
| the device on the client side | [No construction is required]; otherwise, refers to "a device on the client side" |
| the merchant websites | [No construction is required]; otherwise, refers to "merchant websites" |
| the one of the merchant websites | [No construction is required]; otherwise, refers to "one of the merchant websites" |
| the plurality of web pages | [No construction is required]; otherwise, refers to "a plurality of web pages" |
| the requested link | [No construction is required]; otherwise, refers to "the link associated with the advertisement on which the user clicked" |
| the search engine | [No construction is required]; otherwise, refers to "a search engine" |
| the server | [No construction is required]; otherwise, refers to "a server" |
| the server side | [No construction is required]; otherwise, refers to "a server side" |
| the server side computing device | [No construction is required]; otherwise, refers to "a server side computing device" |
| the user | [No construction is required]; otherwise, refers to "a user" |
| the websites | [No construction is required]; otherwise, refers to "merchant websites" |

**Order of Steps**

| Steps | Order |
|---|---|
| Order of steps of claim 1 of the '104 patent | [No construction is required]; otherwise, steps occur in order but any step or |

| Steps | Order |
|-------|-------|
| | combination of steps may be repeated an unlimited number of times. |
| Order of steps of claim 1 of the '667 patent | [No construction is required]; otherwise, step (c) may occur before or contemporaneously with steps (a) or (b); step (d) may occur before or contemporaneously with steps (a) or (b); step (e) may occur before or contemporaneously with steps (c) or (d); step (f) may occur before or contemporaneously with steps (c) or (d);  but any step or combination of steps may be repeated an unlimited number of times. |
| Order of steps of claim 10 of the '667 patent | [No construction is required]; otherwise, steps (a) through (c) occur in order, then step (e), then step (d); but any step or combination of steps may be repeated an unlimited number of times. |
| Order of steps of claim 14 of the '667 patent | [No construction is required]; otherwise, steps (a) through (d) occur in order, then step (f), then step (e); but any step or combination of steps may be repeated an unlimited number of times. |
| Order of steps of claim 18 of the '667 patent | [No construction is required]; otherwise, step (c) may occur before or contemporaneously with steps (a) or (b); step (d) may occur before or contemporaneously with steps (a) or (b); step (e) may occur before or contemporaneously with steps (c) or (d); but any step or combination of steps may be repeated an unlimited number of times. |
| Order of steps of claim 1 of the '763 patent | [No construction is required]; otherwise, step (c) may occur before or contemporaneously with steps (a) or (b); step (d) may occur before or contemporaneously with steps (a) or (b); step (e) may occur before or contemporaneously with steps (c) or (d); step (f) may occur before or contemporaneously with steps (c) or (d); but any step or combination of steps may be repeated an unlimited number of times. |
| Order of steps of claim 10 of the '763 patent | [No construction is required]; otherwise, steps (a) through (c) occur in order, then step (e), then step (d); but any step or combination of steps may be repeated an unlimited number of times. |
| Order of steps of claim 14 of the '763 patent | [No construction is required]; otherwise, step (c) may occur before or contemporaneously with steps (a) or (b); step (d) may occur before or contemporaneously with steps (a) or (b); step (e) may occur before or contemporaneously with steps (c) or (d); but any step or combination of steps may be repeated an unlimited number of times. |

| Steps | Order |
|---|---|
| Order of steps of claim 1 of the '057 patent | [No construction is required]; otherwise, steps occur in order but any step or combination of steps may be repeated an unlimited number of times. |

Brite Smart notes that to the extent differences exist regarding ordering disputes, Brite Smart may use extrinsic evidence to argue its positions.  With regard to the possibility of a code being assigned to the user prior to the receipt of a request from a user, Brite Smart intends to rely in part on extrinsic evidence explaining how Google can assign identifiers to users prior to the user initiating a search request.  For example, Google may assign a cookie the moment that a person first accesses any web page run by Google or a Google partner (see, e.g., Google's privacy and terms).  This generally occurs well in advance of the person submitting a search request, in fact it must:  that is, one must access the webpage at www.google.com prior to initiating a search request.  Brite Smart explicitly incorporates by reference its infringement contentions.  Brite Smart also incorporates its evidence related to the use of cookies identified in connection with the "cookie" claim term.