IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRITE SMART CORP. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civ. Action No. 2:14-cv-760-JRG-RSP |
| | § | |
| GOOGLE INC. | § | **JURY DEMANDED** |
| | § | |
| *Defendant*. | § | |
| | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL THE
PRODUCTION OF SOURCE CODE, DOCUMENTS, INTERROGATORY RESPONSES
<u>AND DE-DESIGNATION OF PROTECTED MATERIALS</u>**

Brite Smart replies to Google's Response (Dkt. 109) to Brite Smart's Motion (Dkt. 80).

## I. GOOGLE'S INTERROGATORY RESPONSES

Google overstates its agreement to provide Brite Smart with the discovery it seeks. Google states that it immediately agreed to supplement its responses to Interrogatory Nos. 15 and 16, pointing to a May 5, 2015 letter that it wrote to Brite Smart. Resp. at 1 citing Resp. Ex. 2. However, Google sent that letter *after* Brite Smart had filed its motion on May 4. As stated in the Motion's Certificate of Conference, the parties conferred in person on April 29.

### A. Google's Response to Interrogatory No. 15

As Google stated in its Response, Brite Smart's Interrogatory was directed at Google's worldwide information. Resp. at 2. Google has still not provided the information requested by the Interrogatory. Google supplemented with a Rule 33(d) reference to GOOG-BRITE-00287299 through 00287310. The referenced production fails to identify any profitability data such as costs, expenses, gross profit margin, operating profit margin, or incremental profit margin. In addition, the referenced production appears to be marked as "US" – referencing United States data – instead of worldwide information as Google understands the Interrogatory to request. Brite Smart continues to seek responsive information.

### B. Google's Response to Interrogatory No. 16

Google argues that "Brite Smart" specifically requested that Google supplement its response to Interrogatory No. 16 for the first time at the parties' in-person conference". Resp. at 3. Parties have a duty to supplement without being asked to do so.

Plaintiff's Interrogatory No. 16 seeks, *inter alia*, information regarding Google's pre-suit knowledge of the patents-in-suit. Google continues to trickle out critical information to Brite Smart at a snail's pace and only after Brite Smart learns of the information through subpoenaed third parties—further highlighting Google's gamesmanship.

1

For example, on May 28, 2015, Google's prosecuting attorneys produced documents responsive to a subpoena request from Brite Smart, including patent prosecution history files that prove Google's knowledge of at least the '104 patent-in-suit as of March 26, 2008. After these documents were produced, Brite Smart notified Google that it was going to move for leave to amend its complaint to add an allegation of pre-filing willful infringement. *See* Dkt. 121. <u>It was only then that Google amended its Interrogatory Response</u>. Moreover, Google's supplementation is inconsistent with its original response. The original response states that Google became aware of the '104 patent when Brite Smart served its original complaint. The supplemental response states that while the '104 patent was identified by the patent office during the prosecution of one of Google's patent applications, Google "did not have actual knowledge of the contents of the '104 patent at that time." Google should be ordered to provide a complete response to the Interrogatory that would include any of Google's pre-filing awareness of the patents-in-suit, not just those independently discovered by Brite Smart.

## II.     GOOGLE'S IMPROPERLY-DESIGNATED MATERIALS

Google suggests that Brite Smart "surprised" Google's counsel at their April 29 meet-and-confer regarding this issue. In fact, Brite Smart's letters of April 1 and April 22 make clear that this was not the case. *See* Motion Ex. B (Dkt. 80-3) at B-123, B-132. Google alleges that it de-designated the documents, yet Brite Smart remains unaware of "over 100" de-designated documents and Google has not identified the Bates range of the purported production. The issue is not moot. Google should provide the 156 over-designated documents for *in-camera* review.

## III.    GOOGLE'S RESPONSES TO REQUESTS FOR PRODUCTION

### A.     RFP 11: Efficacy of click-fraud detection filters

Brite Smart has not located any document production responsive to this request, nor has Google identified any.

### B. RFP 166: Prior litigation documents

Brite Smart has not located any production responsive to this request. Google has taken the position that they will "agree" to produce the requested materials for two of the five requested cases. The Court should reject Google's "offer" and require Google to produce the requested documents for its earlier litigation that also involves the same accused Google services as here. Google was served with this RFP on February 13, 2015. Dkt. 80-11. And, beyond attorney argument, Google offers no evidence – no declaration, no deposition testimony, nothing – providing a concrete or particularized assessment of the burden of such a production.

Google's actions regarding the production of the *Lane's Gifts* case was simply a data dump. *Lane's Gifts* was filed on behalf of advertisers who alleged that they did not receive proper value for their advertising money spent because of click-fraud issues. Google produced over 200,000 pages of advertiser contracts and invoices during a time period prior to the issuance date of any of the patents-in-suit in this case. Google failed to produce in *Lane's Gifts* the categories of information identified in RFP 166: "deposition transcripts, briefs, court hearing transcripts, and expert reports." Yet Google points to their *Lane's Gifts* "data dump" in a misguided attempt to convince the Court that, by virtue of the sheer number of pages it has produced, it is complying with its discovery obligations. It is not. As this Court has long held, data dumps or document dumps are not permissible in this district. *Reedhycalog UK, Ltd v. United Diamond Drilling Services, Inc.*, No. 6:07-cv-251 at *8 (E.D. Tex. Oct. 2, 1008). Brite Smart respectfully requests that the Court order Google to produce the "deposition transcripts, briefs, court hearing transcripts, and expert reports" from all of the highly relevant cases requested in RFP 166. All of the cases involve the Google advertising services at issue here: AdWords and AdSense.

### C. RFP 168: Documents concerning Google's pending or abandoned patent applications

In its Response, Google represents to the Court that it has already produced "documents concerning any invention disclosures or pending or abandoned patent applications relating to click-fraud." Resp. at 6. This is demonstrably false. Brite Smart's motion for leave to amend its complaint to add pre-filing willful infringement allegations explains how after Google refused to provide the prosecution file histories, Brite Smart subpoenaed the documents from Google's prosecution counsel. While it is apparent that Google has failed to produce the patent application file histories with regard to one of its patent prosecutors, Brite Smart is not aware of whether other prosecution counsel may also have been involved in the prosecution of Google's patent applications relating to click-fraud. Therefore, Google should be ordered to produce the prosecution information requested by RFP 168.

## IV. GOOGLE HAS LIMITED ITS SOURCE CODE PRODUCTION TO ITS INTERPRETATION OF BRITE SMART'S INFRINGEMENT CONTENTIONS

### A. Google has failed to address the categories of source code identified in the Motion to Compel.

Without denying that they are relevant, Google wholly ignores the list of relevant source code identified in the Motion to Compel. *See* Motion at 2-3. More importantly, Google does not argue that it has, in fact, produced the source code. Google's only argument is that the source code described in its Motion to Compel is different from the body of source code described during the parties' in-person meet-and-confer. Brite Smart disagrees.

Google cites *Edward D. Ioli Trust v. Avigilon Corp.* for the proposition that Brite Smart must demonstrate the relevance of its source code request. Resp. at 9 citing No. 2:10-cv-605-JRG, Dkt. 279, Memorandum Opinion and Order, at 2 (E.D. Tex. Nov. 16, 2012). In that case, the Court agreed that the alleged infringer must produce any and all documents (including source

4

code) describing the operation of <u>any aspects or elements of an accused instrumentality</u>. *Ioli Trust* at *4. Google does not argue and cannot contend that the requested source code is not an aspect or element of the accused systems. And there is no serious question that the source code is material to Brite Smart's contention that Google's systems practice Brite Smart's patents.

### B. Google has not complied with P.R. 3-4(a)

In its Response, Google did not address its compliance with P.R. 3-4(a). Under this Court's rules, Google must produce source code and documentation "sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P.R. 3-1(c) charts. As explained in its Motion, all of the source code requested by Brite Smart falls into the above category. *See* Motion at 2-5.

### C. Google falsely represents that it has produced all its source code over and over again.

Google's statements that it has produced its source code go back to December of 2014. Motion at 1. Each time, Brite Smart reviews the produced source code and determines that relevant code is missing. *Id*. It is a time-intensive process to review source code to determine what files have been produced and, more importantly, what files have not been produced.

Google's Response further strains credibility because it suggests that Google does not maintain a list of the names of its click-fraud detection filters. Resp. at 9 ("Google had agreed to investigate whether such a list is kept in the ordinary course of business and produce such a list if available.") Yet somehow, Google was able to cite the precise number of filters it uses. Resp. at 10. How could Google know the exact number of filters without having a list? To be abundantly clear, Brite Smart seeks the actual source code, but notes that this extensive dispute has, to date, failed to even yield *a list*.

5

DATED: June 11, 2015                    Respectfully submitted,


                                        /s/ *Robert Katz*___
                                        Stafford Davis
                                        State Bar No. 24054605
                                        Email: sdavis@stafforddavisfirm.com
                                        **THE STAFFORD DAVIS FIRM, PC**
                                        305 South Broadway
                                        Suite 406
                                        Tyler, TX 75702
                                        Phone: (903) 593-7000
                                        Fax: (903) 703-7369

                                        Robert D. Katz
                                        Lead Attorney
                                        State Bar No. 24057936
                                        Email: rkatz@katzlawpllc.com
                                        **KATZ PLLC**
                                        6060 N. Central Expressway, Suite 560
                                        Dallas, TX 75206
                                        Phone: (214) 865-8000

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **BRITE SMART CORP.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on date indicated above.

                                        /s/ *Robert Katz*___
                                        Robert Katz