IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRITE SMART CORP. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **Civ. Action No. 2:14-cv-760-JRG-RSP** |
| | § | |
| GOOGLE INC. | § | **JURY DEMANDED** |
| | § | |
| *Defendant*. | § | |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO GOOGLE'S MOTION TO COMPEL
RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**

Plaintiff Brite Smart Corp. ("Brite Smart") files this Response in Opposition to the

Motion to Compel Responses to Interrogatories and Production of Documents (Dkt. 116) filed by

Defendant Google, Inc. ("Google") and would respectfully show the Court the following:

**I.     GOOGLE'S COMPLAINTS REGARDING INTERROGATORY RESPONSES
ARE PREMATURE AND MERITLESS**

**A.     Google's Motion is Premature**

As a preliminary matter, Google's Motion is premature.  Google admits that Brite Smart

supplemented its Interrogatory Responses.  Motion at 2; *see also* Dkt. 116-7 (Brite Smart's

Supplemental Responses).  In addition, Brite Smart stated:

> You are correct that we supplemented our interrogatories in an attempt to assuage
> your concerns, despite our belief that supplementation is unnecessary.  You
> provide a few examples of issues you still believe need to be cured.  We are
> happy to discuss them further with you on a call to see if we can meet on common
> ground, so just let us know when you'd like to discuss them.

Dkt. 116-18 (Letter from Brite Smart to Google dated May 7, 2015.)  Instead of engaging in

substantive discussions to resolve any additional concerns, Google waited almost a month and

then filed its half-cocked second motion to compel.

**B.      Interrogatory No. 1: Conception and Reduction to Practice**

Google asks this Court to compel Brite Smart to provide information regarding conception and reduction to practice on a claim-by-claim and element-by-element basis.  The information Google seeks is simply not available.  Moreover, Google cites no authority requiring a plaintiff to identify conception and reduction information on an element-by-element basis, and Brite Smart is aware of none.

Google also argues that Brite Smart did not produce the original document from the inventor describing the invention that was the subject of the application that led to the issuance of the first of the patents-in-suit.  Motion at 5.  Google is well aware that it questioned the inventor, Mr. Patrick Zuili, regarding this issue during deposition on April 29, 2105—well before it filed its Motion—and Mr. Zuili stated that he no longer had the document that he sent to the practitioner in January 2003:

> Q:  Well, let me ask this follow-up:  The - - in - - in - - I think you had mentioned previously that generally in the process of when you're, you know, inventing something, that you write your idea down; is that right?
>
> A:  (Nods head up and down.)
>
> Q:  Yes?
>
> A:  It's fair to say, yes.
>
> Q:  And so presumably you would have done that in relation to the patents-at-suit in this case?
>
> A:  Yes.
>
> Q:  Do you have that writing still?
>
> A:  No.

Dkt. 116-15, 65:9-21.  Simply put, Brite Smart does not have the disclosure.

### C.      Interrogatory No. 2: Secondary Considerations

Google complains that while Brite Smart stated in its interrogatory response that the invention had been adopted by others since 2005, Brite Smart did not identify the "others" or state when in 2005 the invention was adopted.   Brite Smart's supplemental interrogatory provided further elucidation:

> Until March, 2005, Google, based in Mountain View, Calif., charged advertisers twice for "double clicks," meaning those occasions when a user unnecessarily clicks twice in quick succession on an ad. Confirming this, Google's Ghosemajumder says that before the company made the change, it felt it had to focus "on issues of malicious behavior," though now it identifies double clicks and bills for only one.

Dkt. 116-7 at 9 (citing a publicly-available source produced by Brite Smart and identified by Bates number.)

Google also complains about Brite Smart's use of Rule 33(d).  Motion at 7.  Brite Smart did not cite indiscriminately to a broad range of Bates numbers.  Instead, Brite Smart cited to seven distinct Bates ranges—each containing scholarly publications, media articles, and web pages. *See* Dkt. 116-7 at 7-9.  The publications reveal the history of the click-fraud problem; provide information pertaining to the depth, impact, and importance of the problem; and information relating to attempts made to address the problem.  Google does not cite any reasons why its burden of gathering the information it requests from the sources cited by Brite Smart would be any greater than Brite Smart's burden.  Finally, Google does not identify any basis to infer that Brite Smart is withholding any facts in its responses.

### D.      Interrogatory Nos. 3, 4, & 7

Interrogatory No. 3 requests that Brite Smart explain how the claims of the patents-in-suit improved upon the prior art.  Google complains that Brite Smart cited to Rule 33(d) which involved citations to articles and publications that described the click-fraud problems, the

importance of the problem, and attempts to address the problem.  Motion at 8-9.  However, in its supplemental response, Brite Smart provides additional responsive information.  *See* Dkt. 116-7 at 11-13.  Brite Smart also notes that Google's interrogatory attempts to exceed the interrogatory limit set by the Federal Rules.  "Defendants may not seek, in a single interrogatory, specific responses for every piece of prior art." *Orion IP, LLC v. Staples, Inc., et al.*, No. 2:04-CV-00297, Dkt. 171 at 1-2 (E.D. Tex. July 7, 2005) ("While Defendants may seek, in separate interrogatories, specific responses regarding specific pieces of prior art, or may seek, in a single interrogatory, a general response regarding all identified prior art, Defendants may not seek, in a single interrogatory, specific responses for every piece of prior art. Such an interrogatory would burden the Plaintiff and dramatically expand the number of interrogatories.").  Nevertheless, Brite Smart's supplemental response cited exemplary limitations found in the claims of the patents-in-suit that are not addressed in the prior art.  *See* Dkt. 116-7 at 11-13.

Moreover, a response to each of a defendant's invalidity contentions is not required by the local rules of this district.  Further, Brite Smart's patents are presumed valid.  *See* 35 U.S.C. § 282(a).  Courts in this district require that the patentee respond to the accused infringer's expert report on invalidity with a rebuttal report of his own.  That response is already referenced as part of the Docket Control Order.  Dkt. 35.

This reasoning also applies to Google's Interrogatory Nos. 4 and 7, which seeks validity contentions.  Other courts have found that interrogatories such as Google's Interrogatories Nos. 3 and 4 were over-broad.  For example, in *Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, the court found that an interrogatory seeking validity contentions was

> premature, oppressive and overbroad. The interrogatory does not target specific claims [defendant] believes are unclear, or which might be subject to early resolution. . . . Once the expert opinions on invalidity are disclosed and analyzed, the invalidity issues may well narrow and change. Accordingly, requiring

> [plaintiff] to answer Interrogatory No. 16 now is likely to result in a waste of time and resources. With the benefit of the expert witness opinions, [plaintiff] should be able to more efficiently and meaningfully answer the interrogatory.

No. 6:12-cv-1379, 2014 WL 186123, *4 (M.D. Fla. Jan. 16, 2014).

### E.   Interrogatory Nos. 9 & 15: Transfers of the Patents-in-Suit

Google complains that Brite Smart's responses to Interrogatory Nos. 9 and 15 cited to Rule 33(d). Motion at 10. Google does not and cannot argue that the burden of deriving or ascertaining the answer to the interrogatories will not be substantially the same for either party. *See* Fed. R. Civ. P. 33(d). *See id.* Thus, Brite Smart's production and identification of the assignment documents is entirely proper. Finally, Google does not identify any basis to infer that Brite Smart is withholding any facts in its responses.

### F.   Interrogatory No. 11: Entire Market Value Rule

Google's allegation that Brite Smart does not provide a substantive response is simply incorrect. Separate and apart from identifying documents under Rule 33(d), Brite Smart stated:

> Click-fraud detection methods form the basis or substantial basis for consumer demand in Pay-Per-Click advertising. Put another way, click-fraud detection capability is "must have" technology for a provider of Pay-Per-Click advertising. Without click-fraud detection, advertisers would lose confidence in the Pay-Per-Click model and would be strongly encouraged to migrate to a pay-per-impression model. Put another way, click-fraud detection is the "motivating factor" that causes an advertiser to choose the Pay-Per-Click advertising model instead of pay-per-impression.

*See* Dkt. 116-7 at 24. Brite Smart identified the infringing components (click-fraud detection methods), and identified what it believes to be the relevant market (pay-per-click advertising), and the basis for consumer demand (click-fraud detection capability). In addition, Brite Smart explained that Google's use of non-infringing components in connection with its click-fraud detection methods would likely allow Brite Smart to provide further elucidation in its response, but noted that Google has been reluctant to provide such information:

> It's possible that Google uses a significant number of non-infringing components for its click-fraud detection capabilities. However, Google has been reluctant to disclose such capabilities, making a complete answer to this Interrogatory premature. For example Brite Smart's Interrogatory No. 5 seeks information that would shed additional light on this analysis. Brite Smart will supplement its response to this Interrogatory as it learns the extent of non-infringing components that Google uses in connection with its click-fraud detection system.

*See* Dkt. 116-7 at 25 (citing Brite Smart's Interrogatory No. 5 which is a subject of Brite Smart's Motion to Compel – Dkt. 57).   In sum, Brite Smart has provided a very sufficient response to Interrogatory No. 11.

### G.  Interrogatory No. 12: Brite Smart's Infringement Contentions

Google's interrogatory relates to Brite Smart's infringement contentions.  Brite Smart has produced hundreds of pages of infringement contentions (and has provided two sets of supplements to Google) containing the element-by-element details concerning Google's infringement, including deposition, design document, and source code citations.  *See* Dkt. 110-2 through 110-17.

Google specifically complains that Brite Smart did not fully address the portion of Interrogatory No. 12 requiring "identifying all documents that contain information regarding your infringement contentions and persons with knowledge regarding your infringement contentions. Motion at 11; Dkt. 116-2 at 11-12.  However, Brite Smart's response reveals a complete answer to the interrogatory.  As for the identification of documents, Brite Smart identified the documents directly in its infringement contentions.  That is, it included deposition, design document, and source code citations in its infringement contentions.  *See* Dkt. 110-2 through 110-17.  By incorporating its infringement contentions in its answer to this interrogatory, Brite Smart has fully responded to that portion of the interrogatory.

> As for the identification of persons with knowledge, Brite Smart fully responded:

> Persons with knowledge of Google's infringement include, without limitation, Google engineers Shrish Agrawal, Abraham Matthews, Razvan Surdulescu, and David Turner.

Dkt. 116-7 at 27.  Thus, Brite Smart has fully responded to all parts of the interrogatory.

### H.      Interrogatory No. 16: Priority Dates of the Patents-in-Suit

In its Motion, Google states that Brite Smart "invokes Rule 33(d) to cite to the patents-in-suit and the '486 patent without any further explanation."  Motion at 12.  Google is again mistaken.  In its initial response, Brite Smart stated "Regarding the priority date portion of the Interrogatory, Brite Smart refers Google to Brite Smart's Response to Interrogatory No. 1."  Dkt. 116-7 at 31.  In its supplemental response, Brite Smart added: "Regarding the priority date referenced in Brite Smart's Response to Interrogatory No. 1 is the priority date for each asserted claim of each of the patents-in-suit."  *Id*. at 32.  In its response to Interrogatory No. 1, Brite Smart explained:

> Based upon the recollection and the usual business practices described by Mr. Zuili during his April 29, 2015 deposition, the detailed enabling disclosure for the application that led to the issuance of the '104 patent was completed during the week prior to the receipt of the disclosure by Mr. Posa [January 14, 2003]. The preceding priority date applies to all asserted claims of all of the patents-in-suit.

Dkt. 116-7 at 6.  Google does not suggest that there was anything but a single disclosure that led to a single application, to which the patents-in-suit claim priority.  In short, there are no additional facts for which to compel a response from Brite Smart.

## II.      BRITE SMART HAS PRODUCED ITS DOCUMENTS

Brite Smart has produced all relevant and non-privileged documents that have been located after a diligent search.  To the extent Brite Smart finds additional relevant and non-privileged documents, it will promptly produce them.  Google describes hollow claims alleging that certain documents "must" exist for one reason or another.  For example, Google complains that Brite Smart has not produced sufficient organizational and operational documents providing evidence of Brite Smart's day-to-day activities.  Motion at 12.  Most of Brite Smart's documents concerning day-to-day activities are no more relevant to this litigation than Google's documents

concerning Google's day-to-day activities.  For example, Brite Smart's administrative activities relating to office functions; website, computer, and email maintenance; banking; financial reporting; and taxes are not relevant to any claim or defense in the litigation.  Brite Smart does not practice the patents-in-suit, and is not seeking lost profits.  Google does not and cannot contend that such records are relevant or are required to be produced.  Nevertheless, Brite Smart has voluntarily produced a number of these types of documents, despite their lack of relevance.

In its Motion, Google also makes reference to its pending Motion to Transfer Venue.  See Motion at 13.  In doing so, Google wholly ignores the vast majority of Brite Smart's documents that are maintained in its Tyler, Texas office, and instead directs its complaints to a single category of documents:  organizational and operational documents providing evidence of Brite Smart's day-to-day activities.  *Id.*  Given that context, Google's complaints regarding a narrow category of documents are a red herring and have little bearing on the more fundamental issue regarding convenience of venue – that the primary location of Brite Smart's office <u>and documents</u> is its principle place of business in Tyler, Texas.

Google makes the empty assertion that "Brite Smart's own CEO, Mr. Zuili, identified, under oath, additional documents within the possession, custody, or control of Brite Smart's employees."  Motion at 13.  Google's assertions are without basis.  Google vaguely cites to another section of its Motion containing deposition citations.  *See* Motion at 3, 4, 13.  However, Google fails to point to a single statement by Mr. Zuili that supports its assertion.  Indeed, Mr. Zuili testified that he was not aware of the existence of other documents:

> Q:  And does he – does he have the documents that would have been filed in 2002?
>
> A:  How do you want me to know what kind of documents Serge has or not?  I have no clue.

> Q: Okay.   And do you know who has - - do you know if anybody has the documents that show the formation of Brite Smart Corp. in June 18th, 2002?
>
> A: No.

Dkt. 116-15, 50:4-11.

Google also argues that it obtained prosecution history documents from practitioners who prosecuted the patents-in-suit, including documents that Brite Smart had not produced.  Motion at 14.  Google does not allege that Brite Smart was aware of the additional documents.  Indeed, Brite Smart produced all of the prosecution documents of which it was aware at the time of its Initial Disclosures.  In any case, because Google has already issued document subpoenas on all four of the patent practitioners who were involved in the prosecution of the patents-in-suit, there is no suggestion that any other documents exist, and its Motion was already moot on this point before Google filed it.

Google also argues that "Brite Smart's Response to Interrogatory No. 1 states that it intends to rely upon an 'enabling disclosure' sent by the inventor to his prosecution counsel to support its asserted priority date for the patents-in-suit."  Motion at 15.  Google complains that "Brite Smart has failed to produce any documents related to this alleged 'enabling disclosure'".  *Id*.  Google is mistaken.  As explained in Brite Smart's response to Interrogatory No. 1, after the enabling disclosure was received by Brite Smart's prosecution counsel, the practitioner opened the application file.  Dkt. 116-7 at 6.  Brite Smart produced the document relating to the practitioner's receipt of the disclosure, which document provides evidence of the date that the practitioner opened the file.  *Id*. citing BSC 002045-46 (Bates numbers containing the prefix "BSC" were produced by Brite Smart Corp.)  Thus, Brite Smart has produced the document relating to the enabling disclosure.  As for the actual disclosure itself, Brite Smart has explained above that it does not have the disclosure.  *See* § I.B at p. 2 above.

**III.    CONCLUSION**

Google's Motion is without merit.  To the extent that its Motion ever had merit, it is now moot.  Google ignored Brite Smart's offer to meet and confer on these issues as set forth above, failed to identify any insufficient responses to its interrogatories, and similarly failed to identify any relevant non-privileged documents that Brite Smart has refused to produce.  Thus, Google's Motion should be dismissed in its entirety.

DATED: June 22, 2015                         Respectfully submitted,

/s/ *Robert Katz*___
Robert D. Katz
Lead Attorney
State Bar No. 24057936
Email: rkatz@katzlawpllc.com
**KATZ PLLC**
6060 N. Central Expressway, Suite 560
Dallas, TX 75206
Phone: (214) 865-8000

Stafford Davis
State Bar No. 24054605
Email: sdavis@stafforddavisfirm.com
**THE STAFFORD DAVIS FIRM, PC**
305 South Broadway
Suite 406
Tyler, TX 75702
Phone: (903) 593-7000
Fax: (903) 703-7369

**ATTORNEYS FOR PLAINTIFF
BRITE SMART CORP.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on date indicated above.

/s/ *Robert Katz*___
Robert Katz